GAVIN *v*. THE CITY OF ATLANTA.

Whenever the legislature has provided for a registration of voters in a municipality, the number of voters registered thereunder is the true test for ascertaining whether the requisite two thirds majority of the qualified voters of such municipality has been obtained at an election for which such registration was provided, and in which the assent of such a majority was requisite to empower the municipality to incur an indebtedness under the constitution of 1877. Where the legislature has prescribed how a majority or two thirds of the qualified voters of a municipality shall be ascertained, the method prescribed by it prevails, and not the common law rule; but the rule prescribed by the legislature of this State for general use in such cases does not apply in cases where the legislature has provided for registration, but applies only where there has been no other or better means provided for ascertaining who the qualified voters are.

November 10, 1890.

Constitutional law. Elections. Registration. Municipal corporations. Before Judge MARSHALL J. CLARKE. Fulton superior court. September term, 1890.

Reported in the decision.

ELLIS & GRAY, for plaintiff.

J. B. GOODWIN and J. A. ANDERSON, for defendant.

SIMMONS, Justice.

Mrs. Gavin filed her petition for injunction and relief against the city of Atlanta, and alleged, in substance, that she was a tax-payer of the city; that the city was about to issue and sell bonds to the amount of $250,000 for the purpose of building a new system of water-

works, and had negotiated the bonds for an agreed price and was about to deliver them; and that these bonds were illegal for the following reasons:    They were voted upon at an election held on April 23, 1890, specially ordered for that purpose, and less than two thirds of the number of those who had registered for the election voted in favor of issuing the bonds, 1,608 votes being cast, out of which number 1,259 were for bonds.    At the last general election in the city only 1,633 votes were cast, which were less than two thirds of the votes registered for that election; so that the votes cast at the special election were less than two thirds of the voters who had registered for either the special or the general election.    The constitution requires the assent of two thirds of the qualified voters of the city to authorize an issue of such bonds, and the petitioner contended that this means two thirds of those entitled to vote.    It was contended that under the charter of the city, the laws of Georgia and the constitution of the State, those persons who registered were not only qualified voters, but expressed by the act of registration a desire to participate in the issue raised by this special election, and they could as well act against the bonds by non-participation as by active protest at the ballot-box; that registration was a test of the qualification, and the qualified voters of the city were those who enrolled themselves under the law; and that two thirds of the voters at either the general or special election having failed or refused to vote for the bonds, they were illegal and ought to be enjoined.

The defendant by its answer practically admitted all the allegations in the petition.    It admitted that the number of persons registered for the last general city election preceding the special election in question, were 2,755, and the number of votes cast in the general election were 1,633.    The number of persons registered

for the water-bonds election of April 29th, 1890, were 2,583; and the number of votes cast at that election were 1,608; 1,259 being for issue of bonds and 349 against. The defendant contended that the bonds, having received two thirds of the votes actually cast in the special election and also two thirds of the votes actually cast in the general election, although not two thirds of the registered voters at either election, were valid. The injunction prayed for was refused, and the petitioner excepted.

As we have seen, the plaintiff contended that the bonds had not received the constitutional majority because they had not received the assent of two thirds of the qualified voters of the city, the qualified voters being those who had registered for that special election. The defendant admitted that two thirds of the voters who had registered did not vote in favor of the issuance of bonds, but contended that under the code, §508(l), two thirds of the number of those who had voted at the last general election had assented to the issuance of the bonds, and they were therefore legal.

The constitution of 1877, art. 7, sec. 7 (Code, §5191), prescribes that no debt exceeding one fifth of one per centum of the assessed value of taxable property therein, shall be incurred by any county, municipality or political division of the State, "without the assent of two thirds of the qualified voters thereof, at an election for that purpose, to be held as may be prescribed by law." The act of 1879, code, §508(l), declares that "In determining the question whether or not two thirds of the qualified voters in said county, municipality or division voted in favor of the issuance of said bonds, the tally-sheets of the last general election held in said county, municipality or division shall be taken as a correct enumeration of the qualified voters thereof." The legislature, in granting the present charter of the

city of Atlanta, provided that "the mayor and general
council of said city shall have power and authority to
provide for the registration of voters prior to any mu-
nicipal election in said city ; to make all needful rules
and regulations for the same, and require that no per-
son be permitted to vote unless registered as aforesaid."
Code of Atlanta, 1886, §102. In accordance with this
provision of its charter, the mayor and general council
of Atlanta passed the necessary ordinances providing for
the registration in all municipal elections, and accord-
ing to the bill and answer in this case, required a special
registration for this special election, with the result
stated. The question for us to decide is whether the
mayor and council, in determining whether or not two
thirds of the qualified voters voted in favor of the
issuance of bonds, should be guided by the general act
of 1879, code, §508(1), by the common law rule, or by
the registration list which they had required taken for
that special election. We admit the common law rule
to be that where an election is held and a majority or
two thirds vote is necessary, the majority or two thirds
of those voting at the election would be sufficient. But
the authorities generally concur that where the law
prescribes how the majority or two thirds shall · be
ascertained, that method prevails, and not the common
law rule. We are very clear that the common law rule
does not prevail in this State, for the legislature has
prescribed a different rule in all cases where it has not
enacted other means to ascertain whether the necessary
two thirds majority has been given in a particular elec-
tion. It is not disputed that the legislature has the
authority to prescribe the test for ascertaining the nec-
essary majority. Caruthers, J., in the case of the
Louisville, etc. R. R. v. County Court, 1 Sneed (Tenn.),
637, 62 Am. Dec. 424, holds that the legislature has
such power. It is a rule of evidence in such cases to

ascertain the number of qualified voters which the legislature has power to prescribe. We think that section 508(1) of the code, *supra*, applies only where there has been no other or better means of ascertaining who the qualified voters are, but that it does not apply in any case where the legislature has provided for registration in a particular county or municipality. Whenever it has provided for a registration, as in the case under consideration, that is the true and legal test for ascertaining whether the requisite two thirds majority has been received or not. The constitutional provision which requires the assent of two thirds of the qualified voters is mandatory. It would be absurd, under this provision, to hold that the qualified voters of a municipality should register in order that it might be ascertained who are qualified to vote, and then hold that this registration has no effect in determining the number of qualified voters in the municipality, but that the test should be the number of voters at an election some twelve months prior to that time. Suppose in this case that four thousand two hundred and fifty-nine persons had registered, and three thousand of them had voted against the issuance of these bonds, would it be said that because 1,259, two thirds of those who voted at the last general election, had voted in favor of bonds, that was two thirds of the qualified voters of the city, when the registration, the test prescribed for this city, showed that 1,259 was not a third of the qualified voters, much less two thirds? In this special election the number of persons registered were 2,583; these were all *prima facie* qualified voters. These were the persons whom the law said were the only qualified voters in the city of Atlanta. No other person in the city than those registered could have voted at that election. The qualified voters, therefore, having been ascertained under the law, the constitution is mandatory

that two thirds of them shall assent before bonds shall be issued. The legislature has no power to prescribe a less number when that number is legally ascertained ; and therefore section 508(l) cannot apply, the true number being ascertained by means of another method adopted by the legislature, and adopted for the express purpose of ascertaining who are the qualified voters in the particular case. Of course if the legislature does not adopt a different method than that prescribed in section 508(l), that is to be the test; but when it prescribes a particular method of ascertaining the qualified voters in a particular county or municipality, we hold that this must be the test. If the legislature should not prescribe any means of ascertaining the number of qualified voters, the common law rule would prevail, and the test would be two thirds of those voting at that election; but as we have said before, we think the legislature has prescribed a different rule in this State, (1) by passing a general law applicable to all counties and municipalities for which no other rule has been enacted, and (2) in providing for registration in certain counties and municipalities. And we are strengthened in this view by the fact that in the constitution of 1868 the rule laid down was the common law rule, the language of that constitution being "a majority of the qualified voters of such town or city voting at an election held for the purpose" (art. 3, sec. 6, par. 4); while in the present constitution the words "voting at an election" are left out, which seems to us to indicate that the convention desired to abolish the former rule, and to prescribe that the number required should be two thirds of all the qualified voters of the county or municipality, and not merely two thirds of those voting at the election.

We are aware that the Supreme Court of the United States, in Carroll County *v.* Smith, 111 U. S. 556, has

put a different interpretation upon the words of the constitution of Mississippi, which are similar to the words of our own constitution; but, as appears from the report of that case, while there was a registration law in the State of Mississippi, it was for general elections, and did not require special registration for special bond elections as the law governing the city of Atlanta does. And the court in that case say, quoting from the opinion of Chief Justice Waite in County of Cass *v.* Johnson, 95 U. S. 369, that the rule laid down would be different if the legislative will to that effect is clearly expressed.

We think we have shown that both the convention which adopted the constitution, and the legislature, have clearly expressed the intention that the common law rule on the subject shall not prevail in this State, (1) by omitting it from the constitution, (2) by passing a general act prescribing a different test, and (3) by authorizing special registration in the city of Atlanta.

The reasons for the change of the rule and the benefit accruing therefrom to counties and municipalities are so obvious, under the peculiar condition of affairs in this State, that we deem it unnecessary to state them.

*Judgment reversed.*