## Irvin *et al.* v. Gregory *et al.*

1. A majority of the complainants having voted in favor of the approval of the local school law now in question, and all of them having acquiesced in the result of the election until after a school was established and put into operation, the judge was warranted in denying an interlocutory injunction to restrain the collection of a tax authorized by the local law and levied thereunder for supporting the public school system provided for by said law. Any infirmity in the law or in the election was as good cause for enjoining the establishment of the schools before the expense was incurred, as it would be now for arresting the collection of revenue with which to defray the expense.

2. The general rule is that provisions in a statute for advertising a proposed election are mandatory unless the time and place of such election are fixed by the legislature, yet where the advertisement prescribed was publication once a week for four weeks, and the last publication was inadvertently omitted but the other three were duly made, the omission may be treated as a mere irregularity, if more than two thirds of the qualified voters actually voted, and if the result has been acquiesced in until after action has been taken on the faith thereof by which substantial rights have arisen.

3. In a local statute authorizing the establishment of public schools in a town, a provision that the local board may admit pupils not residents of the town on such terms as the board may prescribe, is not to be construed as allowing the board to prescribe terms which would cast upon the town or its inhabitants any part of the expense of educating non-resident pupils. Such pupils cannot be received at a less rate per scholar than the inhabitants of the town pay by taxation for their children, nor can they be received at all to the exclusion of resident children who would otherwise attend.

4. In so far as municipal public schools perform the functions of common schools, they must be free to all the children of the municipality just as the common schools in general are free to all children of the State. This results from the scheme of the constitution in regard to public schools. It follows that the exaction of an incidental fee to be paid by each and every pupil as a con-

dition of admission into the public schools of a town, though con-stitutional as applied to non-resident pupils, would be unconsti-tutional if applied to resident pupils also.

5. The main purpose of a statute passed by the General Assembly and approved by two thirds of the qualified voters of a given town, being to establish and maintain a system of public schools in and for said town, an unconstitutional requirement therein which ex-acts an incidental fee annually of all pupils, thereby including resident as well as non-resident pupils, will not necessarily vitiate the whole statute. If, as matter of fact, the means otherwise provided for establishing and maintaining the schools are suffi-cient for the purpose, the law can have effect, notwithstanding the failure of the legislative and the popular intent touching the universality of the requirement for the payment of incidental fees.

6. Administrative acts on the part of the local board of education, even if erroneous or wrongful and amenable to proper remedial proceedings, furnish no cause for enjoining the collection of a school tax legally assessed.

February 7, 1891. By two Justices.

Injunction. Elections. Schools. Taxation. Stat-utes. Publication. Constitutional law. Before Judge FORT. Stewart county. At chambers, November 1, 1890.

Reported in the decision.

STEED & WIMBERLY, J. L. WIMBERLY and HARRISON & PEEPLES, for plaintiffs.

R. F. WATTS and LITTLE & WIMBISH, for defendants.

BLECKLEY, Chief Justice.

1. The election was held on the 19th day of July, 1890. This bill was filed on the 20th of October, 1890. In the meantime, the local board of education provided for by the act had gone to work, established and opened a school, and the school had been in actual operation for about six weeks before any steps were taken by the complainants to have the election declared illegal. More than half of them had voted in the election in favor of the school law, and all of them acquiesced in the result until after the school had been organized and put to work. This involved expense, and the complainants

stood by and permitted the expense to be incurred when full diligence on their part in making an application for injunction would have raised the question which they now seek to make in time to have put the question on its own merits, uncomplicated with the consequences of delay in making it. Under these circumstances the judge was warranted in denying a preliminary or interlocutory injunction on the application of these complainants, who sue, not in behalf of the citizens of the town generally, but for their own separate benefit and protection. If they have any good cause for enjoining the collection of the tax, that cause would have been equally good for enjoining the establishment and opening of the school at the expense of the town,—an expense which they must have known was incurred with the expectation that a tax would be imposed to defray it. In the view of a court of equity it would not be altogether conscientious for citizens of a town to acquiesce in the establishment of a public school system for the benefit of the town until that benefit had been secured, and then object to contribute their *pro rata* of taxation necessary to defray its expenses for the first year. Especially is this true of most of the complainants; for they not only acquiesced, but took an active part by their votes in causing a public school system to be adopted.

That the objection now urged against the tax might as well have been urged against the creation of the municipal obligation rendering the tax necessary, see *Hudson* v. *Marietta*, 64 *Ga.* 286 ; *County of Dougherty* v. *Boyt*, 71 *Ga.* 484; *Gavin* v. *City of Atlanta*, 86 *Ga.* 132, 12 S. E. Rep. 262 ; *Crampton v.* Zabriskie, 101 U. S. 601, 609 ; Howell *v.* City of Peoria, 90 Ill. 104 ; 1 Dillon Municip. Corp., 4 ed. §197 *et seq.* ; Cooley Taxation, 764.

Of the thirteen complainants one is a woman, and

had no vote in the election, and another is a man who voted against the measure; but these two have linked their fortunes in this bill with the other complainants, seven of whom voted in favor of the approval of the local law authorizing the establishment of the school.

2. Perhaps what we have already said would be enough to dispose of the case in so far as the element of interlocutory injunction is concerned. But as we have held it up for a considerable time for the purpose of dealing with it in a broader and more comprehensive way, we shall express our opinion upon several of the points in controversy argued at the bar and on which a decision was invoked. Did the want of a strict compliance with the terms of the statute in advertising the election render the election void? The constitutional provision under which the act was passed reads as follows: "Authority may be granted to counties upon the recommendation of two grand juries, and to municipal corporations on the recommendation of the corporate authority, to establish and maintain public schools in their respective limits, by local taxation; but no such local laws shall take effect until the same shall have been submitted to a vote of the qualified voters in each county or municipal corporation, and approved by a two thirds vote of persons qualified to vote at such election; and the General Assembly may prescribe who shall vote on such question." Code, §5207.

The provision in the act of 1889 (pp. 1305-6), under which the election was held, reads thus: "This act shall be submitted to an election for approval or disapproval by the qualified voters of the town of Lumpkin; said election to take place on such day as the mayor and council may determine, notice of which election shall be given by the mayor of said town by publication in any newspaper published in the town of Lumpkin once a week for four weeks previous to the day of election.

Those favoring public schools shall have printed or written on their ballots 'For Public Schools,' and those opposing shall have printed or written on their ballots 'Against Public Schools.' That said election shall be held in the same manner as elections for mayor and council of the town of Lumpkin are held, and all those qualified to vote at an election of mayor and council of said town shall be permitted to vote at the election herein provided for. The managers of said election shall certify the number of votes cast 'For Public Schools' and 'Against Public Schools' to the mayor and council of said town of Lumpkin, and if two thirds of the qualified voters of said town shall vote 'For Public Schools' the mayor of said town shall so declare in writing, and publish his said declaration once in any newspaper published in said town, and upon said publication this act shall take effect and be of force, and the public schools therein provided for shall be put in operation as soon as deemed practicable by said board of education of the town of Lumpkin." The election was advertised in the proper newspaper for a period of four weeks before the day of election, but there was an omission, which seems to have been altogether casual and undesigned, to insert it in the issue of the last week of the four; that is, it was published once a week for three weeks, but in the fourth week it failed to appear. There was thus a literal departure from the requirement of the statute; for though notice was given four weeks, it was not given by publication once a week for four weeks, previous to the day of the election. When the time and place of an election are fixed by law, the requirement of notice is directory; but when they are not so fixed, and the duty of fixing them is committed to a municipal body, what the statute prescribes as to the giving of notice is mandatory. This is the general rule. Paine on Elections, §385; 1 Dill. Municip. Corp. §197; Cooley Const. Lim. 759; 6 Am. and Eng. Enc. L. 297 *et. seq.*

The town of Lumpkin is not a large one and there is every probability that the election, although not advertised with strict regularity, was known to every inhabitant interested in the question except one, whose affidavit is in the record. More than two thirds of the qualified voters actually voted; and such was their unanimity in favor of the measure that only one vote was cast against it. The rule of our code, §4, ¶6, is that a substantial compliance with statutory requirements, especially on the part of public officers, will suffice. Where it affirmatively appears, as it does here, that the results of notice have been realized as to the great body of the voters, we feel warranted in concluding that the publication in this instance for four weeks, though there was an omission of one insertion, was a substantial compliance with the terms of the act. The purpose of the notice was to make generally known the time and place of election. This was as fully accomplished in the present case as it was in Wheat v. Smith, 50 Ark. 266, 7 S. W. Rep. 161. The law involved in that case required two modes of advertising the election, one of which was wholly omitted; nevertheless the election was upheld. In State v. Echols, 41 Kan. 1, 20 Pac. Rep. 523, the vote was not full, and one of the modes of advertising having been omitted, the election was held invalid. In each of these cases we think the substance of the matter was regarded, and rightly so. If in the present case all those who failed to vote had appeared and voted, there could not by any possibility have been any change in the result of the election even had the absentees all voted one way. Their votes would have counted for nothing on the final result. To suffer this election to be overthrown upon so slight a ground as the casual omission of one insertion of the notice in the newspaper, would be to sacrifice substance to mere form.

We might be obliged to do this if the election had been attacked before anything substantial had been done upon the faith of it. In *Mize* v. *Speight*, 82 *Ga.* 397, there was an omission to advertise in strict conformity with the statute relating to the stock-law, and the question not being made until after the law had been treated by the citizens in consequence of the election as operative, this court held that the omission was a mere irregularity. In *Bowen* v. *Mayor, etc. of Greenesboro*, 79 *Ga.* 709, the application for injunction was promptly made before the election had been acted on to the injury of any one, and the ruling here was that the injunction ought to be granted. There is no doubt that mere irregularities, in executing laws touching taxation, public money and public indebtedness, ought to count for much where they are complained of promptly and properly. But where they are acquiesced in until injury would be done by recognizing them as fatal, they should have no force or influence upon the substantial rights of parties litigant. They are then within the spirit of our general law touching elections which declares that "No election shall be defeated for non-compliance with the requirements of the law, if held at the proper time and place by persons qualified to hold them, if it is not shown that by that non-compliance the result is different from what it would have been had there been proper compliance." Code, §1334.

3. As to the constitutionality of the local act there can be no doubt so far as its main features are concerned. Were it unconstitutional in its provisions relating to admitting pupils who are not residents of the town, those provisions would fail, but this would not interfere with the general scheme of the law. We however think that under a proper construction and administration of the act, it is not unconstitutional in this respect. The act certainly does not contemplate

that non-residents are to be educated at the expense of the tax-payers of the town. The power given to the board of education to fix the terms is not a power to be exercised so as to work that result. No terms can be fixed which will make the expense to non-residents less per scholar than the expense per scholar to the tax-payers of the town for supporting the school. In other words, non-residents are at least to pay for their own tuition, and the people of the town are not to be burdened as tax-payers with any part of the same. The board can put terms upon non-residents which will make their tuition a source of revenue to the school, but cannot allow terms which will make it an expense upon the inhabitants of the town. If the power has not been thus construed heretofore, it must be so construed hereafter, as this is the only construction which the local act in the light of general principles will bear. The board must exclude all non-residents who fail to contribute as much per scholar for the non-resident children as the tax-payers of Lumpkin contribute per scholar to educate the children of the town. Furthermore, the board would have no power to admit non-residents at all to the exclusion of any resident applicant for tuition. It would only be to unoccupied seats in the school that non-residents could be admitted, and they could remain only so long as their seats were not called for by or on behalf of resident pupils. The sufficiency of the title of the act to cover all its provisions is disputed, but there is no ground for this contention. *Hope* v. *Gainesville*, 72 *Ga.* 246.

4. One provision, in the 6th section of the act, is clearly unconstitutional, if taken in the full breadth of its letter and applied to the children of the town as well as to non-resident pupils. It reads as follows: "The said board of education shall require each child, upon entering said schools, to pay to said board an in-

cidental fee of not less than five dollars nor more than
ten dollars per scholastic year, and that no child shall
attend said schools or enjoy the benefit thereof in any
manner until the required fee is paid; provided, that
said board may require said incidental fee paid in quar-
terly installments." A public school system from which
resident pupils can be excluded because they are un-
able or unwilling to pay for admission, is not the sys-
tem contemplated by the constitution. As will appear
from the extract quoted under the second head of this
opinion, authority may be granted to establish and
maintain public schools by local taxation. There is no
hint in the constitution that these schools are to be
open to persons who pay and closed against those who
do not pay. So to treat them would put them out of
harmony with the common school system of the State
provided for in a preceding paragraph of the constitu-
tion (Code, §5204); as to which the constitution ex-
pressly declares: "The schools shall be free to all chil-
dren of the State, but separate schools shall be provided
for the white and colored races." There can be no
doubt that municipal public schools, in so far as they
perform the functions of common schools, are to be
free to the children of the municipality, just as the
ordinary common schools are free to the children of the
State. And that the public schools contemplated by
the local statute for the town of Lumpkin were intended
to perform the functions of common schools, is shown
by the fact that the local board of education is author-
ized by the statute to receive and disburse the *pro rata*
share of the State school fund for Stewart county for
each child attending the school established by the
board. It follows, that were it necessary to save the
constitutionality of the local act as a whole, it would
be incumbent upon the courts to construe the require-
ment that each child, upon entering the schools is to pay

an incidental fee, and that no child shall attend said schools or enjoy the benefit thereof until the fee is paid, as applying to non-resident children only. So construed, the requirement can have effect; whereas, by taking the language in its broad and most comprehensive sense, it would militate with the constitution.

5. It is suggested, however, that the legislature having plainly declared that "the said board of education shall require each child, upon entering said schools, to pay to said board an incidental fee of not less than five dollars nor more than ten dollars per scholastic year, and that no child shall attend said schools or enjoy the benefit thereof in any manner until the required fee is paid," and the people of the town having voted upon and approved the act with these words in it, the whole act is vitiated because the provision, in its comprehensive and obvious sense, is unconstitutional. It is altogether probable that both the legislature and the people intended the provision to be taken and understood literally, but it is a well-established principle that unless the main purpose of a statute is affected by the unconstitutionality of a particular provision, the whole act is not thereby defeated. We think this rule applies as well to statutes submitted to the people for their approval as to any other acts of the legislature. In Robinson *v.* Bidwell, 22 Cal. 392, it was said: "But if the vote of the people could be considered as the act of legislation, the result would be the same. We must in that case apply the same considerations to determine the validity of a law passed by a direct vote of the people, that are applicable to determine the validity of a law passed by the legislature." We think this sound doctrine, notwithstanding it may be supposed to be in conflict with the view of the Supreme Court of Ohio, as manifested in The State *v.* Commissioners of Perry County, 5 Ohio State, 497. It seems to us that when

the people are called in, whether by the constitution or by a statute, to assist in the act of legislation, the resulting statutory provisions must be tested by the same rules as apply to the enactments of the ordinary legislative power.　Whatever can be treated as non-essential in a statute passed by the concurrent votes of the Senate and the House of Representatives, and approved by the Governor, can be so treated when enacted into a valid law by the additional concurrence of the people to be affected thereby.　The question then is whether, granting that the legislative purpose must fail as to exacting an annual incidental fee from all children of the town of Lumpkin attending the schools, the whole system of public schools for the town of Lumpkin must be defeated.　There can be no doubt that the main purpose of the statute was to have and maintain the schools. If therefore they can be had and maintained without the aid of this fee, the main purpose can be made effectual; otherwise it cannot.　The statute denominates the fee in question as incidental, and evidently does not look to it in other than an incidental way as a fund for the support of the schools.　On the contrary, it authorizes municipal taxation for that purpose annually, not to exceed one half of one per cent. on all the property in the town subject to taxation.　In addition to this, it devotes the *pro rata* share of the State school fund for the county to the general object of establishing and maintaining the schools.　Whether these sources of revenue will be sufficient to uphold and execute the main purpose of the act, is a question of fact rather than of law; but we see nothing on the face of the act itself to negative their sufficiency or to indicate that the provision relating to the incidental fee was so essential, either in the legislative or the popular mind, as to warrant the conclusion that the school system provided for by the act would not have been adopted in its main features if

the legislature or the people had foreseen that the fee could not be constitutionally exacted from resident children. This being so, the unconstitutionality of the comprehensive language used by the act touching the incidental fee, does not vitiate the whole act, but is to be rejected, or rather restricted in its operation as we have above indicated. Warren *v.* Mayor, etc., 2 Gray, 84; Mobile & Ohio R. Co. *v.* The State, 29 Ala. 573; Robinson *v.* Bridwell, 22 Cal. 379; Cooley Const. Lim. 209 *et seq.;* Sutherland on Stat. Constr. §169 *et seq.*

6. Mere administrative acts on the part of the local board of education are complained of, but it is enough to say of these that they furnish no cause for enjoining the collection of the school tax. If as public functionaries the board fail to execute their duties conformably to law, the remedy is not to cut off their supply of money by enjoining lawful taxation or the collection of taxes legally assessed, but some other appropriate proceeding.

There was no error in denying the injunction.

*Judgment affirmed.*