24476. KACOONIS et al. v. CITY OF MOUNTAIN VIEW et al.

ARGUED FEBRUARY 12, 1968—DECIDED MARCH 7, 1968—
REHEARING DENIED MARCH 21, 1968.

*Wallace, Wallace & Driebe, Howard P. Wallace,* for appellants.
*Reeves & Collier, Merrell Collier,* for appellees.

ALMAND, Presiding Justice. This appeal seeks a review of orders sustaining general and special demurrers to an equitable petition and overruling the plaintiffs' oral motion to dismiss defendants' plea in bar.

P. K. Kacoonis and several other individuals alleging themselves to be registered voters, freeholders and residents of the City of Mountain View, Clayton County, Georgia, and naming the City of Mountain View, a municipal corporation, and five individuals as mayor and councilmen of said city as defendants, sought to restrain said defendants from ordering all property in the City of Mountain View returned for purposes of ad valorem taxation in accordance with an allegedly invalid election held on October 22, 1966. Said election was conducted under the provisions of Section 7 of the charter of the City of Mountain View (Ga. L. 1956, pp. 2518, 2521) which provides in part that "no ad valorem tax shall ever be levied until such taxation has been approved by the majority of voters residing in said city, who are qualified and properly registered to vote in Clayton County elections, at a referendum called for that purpose. If such ad valorem tax is voted, the mayor and council are hereby authorized to set up the necessary method for making tax returns, issuing fi. fas., collecting such fi. fas. by selling real or personal property to satisfy the same, and authorizing the marshal to make and execute deeds of title to the purchaser of such property at such tax sale."

The plaintiffs' petition alleged that on October 22, 1966, when the election was held there were 455 registered voters in the City of Mountain View who were qualified to vote in Clayton County elections and 277 voters would have constituted a majority, that 112 votes were cast for the ad valorem tax and 104 votes were cast against it, that the defendants met and declared the results to be in favor of the assessment of an ad valorem tax, that the plaintiffs sought to restrain the defendants from ordering the return of property for ad valorem taxation and that after

hearings and rulings of the court, the plaintiffs dismissed a prior suit against the defendants and instituted the present suit.

The several prayers of the petition were that (a) the election of October 22, 1966, be declared null and void (b) the defendants be enjoined from ordering the return of all property in the City of Mountain View for the purposes of ad valorem taxation and (c) the court determine the minimum number that would constitute a majority of the registered and qualified voters of the City of Mountain View on October 22, 1966.

The defendants filed a plea in bar and general and special demurrers to the petition. The plea in bar was grounded upon a portion of Section 3 of the Charter of the City of Mountain View (Ga. L. 1956, pp. 2518, 1519) which provides: "The mayor and council shall have the authority to adopt the necessary ordinances providing for the rules and regulations to govern the holding of all elections, governing registration, voting, declaring the results, filing and hearing contests, and all other matters connected therewith." The plea in bar made the allegations that pursuant to said charter an ordinance was enacted providing for a special meeting of the mayor and council following each election at which the results of the election would be declared and that after the election of October 22, 1966, a special meeting was held and counsel for the plaintiffs was present and made no specific contest or complaint as to the election. The plea in bar prayed that the court proceed no further with the action.

The defendants' general and special demurrers assert that the plaintiffs have an adequate remedy at law and were barred from resorting to equity by their failure to contest the election before the mayor and council.

The court sustained all the defendants' demurrers and denied the plaintiffs' oral motion to dismiss the defendants' plea in bar. The plaintiffs' appeal enumerates error on both orders.

■ The defendants have moved to dismiss the appeal on the ground that the delay in transmittal of the record to this court for a period of more than six months was due to the failure of the plaintiffs to pay the cost of preparing the transcript of the record. The clerk's certificate on the record transmitted to this court recites "that this appeal being transmitted is late due to

heavy work load in this office and also due to a delay in paying additional cost by the appellant [plaintiffs] for preparing the designation of record filed by the appellees [defendants]. The record was completed on June 13, 1967; cost bill inadvertently sent to appellees on June 14, 1967; cost paid by appellant on December 12, 1967." The record shows that the defendants on May 30, 1967, filed a designation of record with the clerk of the trial court for additional portions of the record, but does not show that a copy of such designation of record was served on the plaintiffs as required by Section 11 of the Appellate Practice Act of 1965 (Ga. L. 1965, pp. 18, 26). The certificate of the clerk shows that the plaintiffs paid the cost of the record as designated by them, but is silent as to whether notice was given to the plaintiffs as to the costs incident to the preparation of the record under the defendants' designation of record. It, therefore, does not appear that the delay in transmission was due to the fault of the plaintiffs. The motion to dismiss the appeal is denied.

■ Whether the court erred in sustaining the defendant's demurrers and overruling the plaintiffs' oral motion to dismiss the plea in bar is dependent upon the answer to two questions: (a) does a court of equity have jurisdiction to determine the legal results of the election? and if so (b) were the results of the election as declared by the mayor and council valid or void?

■ As to the question of jurisdiction, we are of the opinion that the court did have jurisdiction to entertain this action. The ruling here is controlled by the full bench decision of *Coleman v. Board of Education*, 131 Ga. 643 (5) (63 SE 41) which held: "As a general rule courts of equity will not deal with contests of elections. But where a statute authorized a tax on property, and provided that the law should become operative in any county or school district only on condition that, at an election to be held for the purpose, the requisite vote should favor the law being made applicable, if, after a pretended election, the levy of a tax on the property of a taxpayer is attempted, equity will, upon appropriate allegations in a petition of the taxpayer, inquire into the validity of the election." At page 648 of the *Coleman* decision, the court said: "Whether a claimant of an

office has such a property right or interest in the office and its emoluments and rights as gives him a remedy by quo warranto, without concluding him to contesting the election, is not here involved. The question presented in the case before us is of a different character. It is not a contest of an election. The legislature has provided for the imposition of a tax upon property and has declared that the law should become operative in a county or district when put in force by an election called in a certain manner, and determined by a certain majority of voters. A person against whose property such a tax is assessed and sought to be enforced can raise the question of whether there is any lawful authority for such assessment and enforcement." Further, at page 651 of the *Coleman* decision, the court went on to say: "The Constitution itself requires the election and the carrying of the measure by a specified majority as a condition precedent to the levy of the tax, and the legislature was given power to make provision as to the conduct of the election. In the law which the General Assembly has passed, no provision has been made for contest or determination of any question, but only for the declaration of the result by the ordinary. The result of the election is not merely to determine some political matter or policy, but directly to impose a tax. We appreciate the difficulties which may possibly arise from the absence of any provision for a mode of contesting the election, or determining any question as to it, before the direct burden of a tax is placed upon property. But that is matter for legislative discretion and action, and is not for the courts. While the law stands as it is, we must hold that the property owner can be heard, not as on a contest properly speaking, but to question whether the officers seeking to levy a tax on his property have authority to do so by virtue of an election carried by the constitutional majority."

We have found no provision of law, general or special, that provides for the means, manner and hearing of a contest of a special election on the question of whether a tax, as in this case, should be assessed and levied on property owners in a municipality. The allegations of the petition are that the majority vote required by the charter of the City of Mountain View was not in favor of the tax, and the election was void. "Injunction

is an available remedy to owners of property in a taxing district, to stay the collection of taxes attempted to be collected by virtue of the authority of a void election." *Roberts v. Murphy,* 144 Ga. 177 (2) (86 SE 545).

▮ Section 7 of the Charter of the City of Mountain View (Ga. L. 1956, pp. 2518, 2521) provides: "no ad valorem tax shall ever be levied until such taxation has been approved by the majority of voters residing in said city, who are qualified and properly registered to vote in Clayton County elections, at a referendum called for that purpose."

In *Gavin v. City of Atlanta,* 86 Ga. 132 (12 SE 262), Gavin as a taxpayer sought to enjoin the issuance of bonds by the City of Atlanta which the city claimed were authorized by a special election. The election was held under the provisions of Art. VII, Sec. VII, Par. I of the Georgia Constitution of 1877 that no debt exceeding a certain percentage of the assessed value of taxable property therein shall be incurred by any municipality "without the assent of two thirds of the qualified voters thereof, at an election for that purpose." An election was held in which two thirds of the number of qualified voters did not vote in favor of the bonds. The city insisted that the bond issue was approved by two thirds of those voting and that was sufficient.

In denying this contention in the *Gavin* case at pp. 135, 136, this court in a full bench decision said: "We admit the common law rule to be that where an election is held and a majority or two thirds vote is necessary, the majority or two thirds of those voting at the election would be sufficient. But the authorities generally concur that where the law prescribes how the majority or two thirds shall be ascertained, that method prevails, and not the common law rule. We are very clear that the common law rule does not prevail in this State, for the legislature has prescribed a different rule in all cases where it has not enacted other means to ascertain whether the necessary two thirds majority has been given in a particular election. It is not disputed that the legislature has the authority to prescribe the test for ascertaining the necessary majority. . . The qualified voters, therefore, having been ascertained under the law, the constitution is mandatory that two thirds of them shall assent before

bonds shall be issued." See also *Goolsby v. Stephens*, 155 Ga. 529 (1) (117 SE 439).

The petition in the instant case alleges that on October 22, 1966, the day of the voting on the tax referendum there were 455 registered voters in the City of Mountain View who were qualified to vote in Clayton County elections and that on this date 112 votes were cast for the tax and 104 votes were cast against it. On general demurrer these allegations are taken to be true. It is thus shown that the number of those voting for the tax was not a majority of the qualified and properly registered voters of Clayton County who resided in the City of Mountain View.

We have examined all of the grounds of the demurrers and are of the opinion that they were erroneously sustained.

The court erred in overruling the plaintiff's oral motion to dismiss the defendants' plea in bar and in sustaining the defendants' demurrers.

*Judgment reversed. All the Justices concur.*