THE MAYOR & COUNCIL OF DECATUR *et al. v.* WILSON *et al.*

1. Construing the "school act" of 1889 for the town of Decatur (Acts 1889, p. 1292), in connection with the act of 1893 amending the charter of that town (Acts 1893, p. 206) which confers upon the mayor and council "power and authority to provide for the registration of voters prior to any municipal election in said town," it could not, under the decision of this court in *Mayor etc. of Madison v. Wade et al.*, 88 *Ga.* 699, in the absence of any registration at all, be legally ascertained whether or not, at an election held under the act first mentioned, two thirds of the qualified voters of the town voted "for public schools." It would have been competent for the municipal authorities, by a proper registration ordinance, to have ascertained the whole number of such voters in the town, but as no such ordinance was adopted and no other legal means of ascertaining such number existed, the fact that two thirds of those voting at the particular election cast their ballots in favor of the establishment of the school system was not a legal test upon the question.

2. There was no error in granting the injunction.

May 15, 1895. Brought forward from the last term.

Injunction. Before Judge CLARK. DeKalb county. December 1, 1894.

W. W. BRASWELL and GOODWIN & WESTMORELAND, for plaintiffs in error.

LEWIS & GREEN and CANDLER & THOMSON, *contra.*

SIMMONS, Chief Justice.

In 1889 the legislature, upon the recommendation of the municipal authorities of the town of Decatur, passed an act to authorize the establishment of a system of public schools in that town, and to provide for acquiring property and buildings and raising revenues to maintain the schools. (Acts 1889, p. 1292.) Under the constitution (art. 8, section 4, paragraph 1; Code, §5207), it was necessary, before the act could go into effect, that it should be submitted to a vote of the qualified voters in the town, and "approved by a two thirds vote of persons qualified to vote at such election." The act provided for such an election, but did not prescribe

the mode of ascertaining the number of persons qualified to vote at the election. In 1893, however, by an act amending the charter of the town, the municipal authorities were authorized " to provide for the registration of voters prior to any municipal election in said town; to make all needful rules and regulations for the same, and require that no person be permitted to vote unless registered as aforesaid." (Acts 1893, p. 208.) In 1894 an election under the act first mentioned was ordered by the municipal authorities, but no ordinance providing for the registration of voters was passed prior to the election. Two thirds of those voting at the election voted "for public schools"; and the municipal authorities were preparing to establish the schools and to assess the taxpayers for their maintenance, when Wilson and others filed a petition, alleging, among other things, that the election was void because no provision had been made by the municipal authorities for the registration of voters; and praying that they be enjoined from establishing the schools and from levying taxes to support them. The injunction was granted, and the municipal authorities excepted.

1. It was argued by counsel for the plaintiff in error, that the act of 1889 not having provided the means of ascertaining the number of persons qualified to vote at the election, the common law rule prevailed; and two thirds of the persons voting having voted to approve the act, this was sufficient. That act, however, is to be construed in connection with the act of 1893, above referred to, which does provide a means for ascertaining who the qualified voters are, the latter act, as we have seen, conferring power and authority upon the mayor and council to provide for the registration of voters prior to "any municipal election in said town." It would have been competent for the municipal authorities, by a proper registration ordinance, to have ascer-

tained the whole number of qualified voters, but as no such ordinance was adopted and no other legal means of ascertaining such number existed, it could not be legally ascertained whether or not two thirds of the qualified voters of the town voted "for public schools." In the case of *Gavin* v. *City of Atlanta*, 86 *Ga.* 132, it was held by this court, that whenever the legislature has provided for a registration of voters in a municipality, the number of voters registered thereunder is the true test for ascertaining whether the requisite two thirds majority of qualified votes of such municipality has been obtained at an election for which such registration was provided, and in which the assent of such majority was requisite to empower the municipality to incur an indebtedness under the constitution of 1877; that where the legislature has prescribed how a majority or two thirds of the qualified voters of a municipality shall be ascertained, the method prescribed by it prevails, and not the common law rule. In the case of *Mayor and Council of Madison* v. *Wade*, 88 *Ga.* 699, it appeared that the legislature had conferred authority on the city council to require registration of persons qualified to vote at any corporate election, but the registration ordinance passed by the city council was not comprehensive enough to include an election to approve a local school act; an election for that purpose was held under a registration which had been ordered for an election of mayor and aldermen, and only those who had registered for the election for mayor and aldermen were allowed to vote at the school election; and it was held that the election was illegal. The court said: "Under the language of the constitution, the school act . . would have to be submitted to all the qualified voters mentioned in the act itself, and two thirds voting at the election would not be sufficient to approve the act unless they were two thirds of the whole number qualified to vote. It would be com-

petent for the city, by passing a proper registration ordinance, to provide for ascertaining the whole number, but until this is done, the act . . cannot be worked in harmony with the provisions of the constitution." The provision of the constitution which requires the approval of two thirds of the qualified voters before schools can be established at the expense of the taxpayers, is mandatory. There must be some means of ascertaining who the qualified voters are, and how many of them are in the municipality; and until this is ascertained, the law cannot go into effect. The only means provided by the legislature for ascertaining this, is registration. Under the common law rule, if a measure of this kind were submitted for approval to the voters of a community, and only a hundred out of a thousand persons qualified to vote should vote at the election, the hundred actually voting would stand as the entire body of legal voters. We think the framers of the constitution intended to abolish that rule, so far as related to elections of this character, and to require that two thirds of those entitled to vote should come forward and cast their votes in favor of schools, under the provision of the constitution above quoted, before the community should be taxed for that purpose. What was said in the *Gavin* case, *supra*, with reference to bond elections, applies with equal force to elections for the purpose of establishing schools at the public expense.

2. The court below did not err in granting the injunction.          *Judgment affirmed.*