## CARVER *et al.* *v.* MAYOR & COUNCIL OF DAWSON.

1. Construing section 18 of the act of September 21, 1883, "to establish a new charter for the city of Dawson," in the light of the legislative intention to be gathered from the entire act, it was not contemplated that the power and authority conferred upon the mayor and aldermen " to provide for the registration of all voters in said city" should be exercised with reference to any elections other than those for the municipal officers of the city.
2. This being so, no registration of the qualified voters of the municipality was essential as a test for ascertaining whether or not the requisite two thirds majority had been obtained at an election upon the question of issuing bonds for the purpose of establishing waterworks and electric lights in that city, but section 508(1) of the code was applicable.

May 11, 1896.

Petition for injunction. Before Judge Sheffield. Terrell county. February 20, 1896.

The plaintiffs in error, as citizens and taxpayers of the city of Dawson, brought their petition to enjoin the municipal authorities from selling or disposing of bonds of the city for the purpose of buying or erecting waterworks and electric lights, and from collecting taxes to pay the same or the interest thereon. The injunction was denied. The answer admitted the truth of the allegations of the petition, which are as follows: On December 12, 1894, an election was held in the city for determining the question whether the bonds should be issued, in pursuance of a due and proper ordinance calling the same. It was then properly and legally advertised. The registration lists of the city for the year 1893 showed 422 registered voters, and at an election for city officers in December, 1893, 314 votes were cast. There was an election in August, 1894, at which 320 votes were cast, the registration books of the city showing 422 registered voters. At the time of the bond election in December, 1894, the registration books showed 491 registered voters. It was held on the same day with the regular election for city officers; and there were 378 votes cast, 298 of which were for bonds. Plaintiffs contend that the issuance of bonds would be illegal, because the vote so cast was not two thirds of the number of voters appearing to have been registered. It is true that under the city charter the mayor and council are authorized to pass a registration law, but they have never passed any ordinance or adopted any rule or law calling for the registration of voters. For several years, however, the city has been holding its elections under and by virtue of registration which plaintiffs allege was held under the charter. There is no waiver of discovery.

The answer shows the following: The election held in August, 1894, was for the purpose of filling a vacancy in the council, caused by the resignation of one of the members, and was the last general election held in and for the city, preceding the election at which the bonds were voted

for. The election held in December, 1893, was the last general election at which all city officers were voted for. While it is true that at the time of holding the election in December, 1894, 491 voters appeared on the registration books, there has never been any city ordinance requiring and regulating the registration of the qualified voters, as authorized by the city charter; and owing to the loose manner in which said registration was and has always been heretofore conducted, a considerable number of voters would be allowed, and often did register, who were not qualified voters of the city and would not be allowed to vote at the election. The election of December 12, 1894, was hotly contested, and after scouring the city only 378 votes were polled, although 491 voters appeared on the registration books. Said registration, according to the charter, could only apply to elections for city officers, and if deemed sufficiently binding without a city ordinance having been passed to that effect, it would not apply to elections held for bonds. Under the law and methods of registration of the voters of the city, said registration is not and cannot be a true test of the number of qualified voters, but would be fictitious; and under every other test the number of votes for bonds was above the requisite two thirds, being over two thirds of the number of votes ever cast in any previous election in the city. The portion of the city charter authorizing a registration of voters (which is all the law of any kind requiring such registration) is attached to the answer. It enacts, that the mayor and aldermen shall have power and authority to provide for the registration of all voters in the city; and to this end they may cause the clerk of the council to keep a registration book in which all persons entitled to vote for officers of the city shall cause their names to be registered ten days before each election; which book shall be closed ten days before such election. No person shall be entitled to vote at said election unless his name be found in said registration book, which book shall

remain open all the time except ten days prior to said election. In any case the clerk shall administer an oath to the applicant, touching his right to be registered, and may, if he believes it absolutely necessary, require the evidence of one or more credible persons that such applicant is legally entitled to be registered. It then provides for the punishment of any person who shall wilfully swear falsely as to the right to be registered.

*J. H. Guerry* and *J. A. Laing*, for plaintiffs.
*M. C. Edwards, Jr.*, for defendants.

LUMPKIN, Justice.

In 1883 the General Assembly passed an act to establish a new charter for the City of Dawson. Acts of 1882-3, p. 404. Section 18 of that act confers upon the mayor and aldermen power and authority to provide for the registration of all voters in that city, but does not definitely and distinctly declare for what elections the registration of the voters shall be had. It is, however, strongly inferable that the only elections in contemplation by the General Assembly were those to be had for the municipal officers of the city. In endeavoring to arrive at the legislative intention with regard to this matter, we have carefully studied the entire act; and as a result, have reached the conclusion that the General Assembly did not intend to either authorize or require a registration of voters with reference to any other municipal elections than those of the kind last above mentioned. If this conclusion is a correct one, it follows, in view of the previous adjudications of this court in cases more or less similar, that no registration of the qualified voters of this particular city was essential as a test for ascertaining whether or not the requisite two thirds majority had been obtained at the election now under review, it being one which had been held upon the question of issuing bonds for the purpose of establishing waterworks and electric lights in that city. The true test to be applied

in this case was that provided for in section 508(l) of the code.

In *Gavin* v. *City of Atlanta*, 86 *Ga.* 132, it appeared that the registration provided for in the city charter related to "any municipal election in said city"; that is, to all elections held therein; and consequently, it was held that it was essential to look to the number of voters registered, in order to ascertain whether or not a two thirds majority of the qualified voters of the city had been obtained at the election then under review. In *Mayor & Council of Madison* v. *Wade et al.*, 88 *Ga.* 699, it was shown that the municipal authorities had ample power to require a registration for any corporate election, including one upon the question of approving a certain school act; but the difficulty was, they sought to apply to an election for that purpose an existing registration ordinance which related only to elections for municipal officers.

The registration act dealt with in *Kaigler* v. *Roberts et al.*, 89 *Ga.* 476, was one which applied only to elections for governor and other officers. Accordingly, it was held that no preliminary registration was requisite to an election held under section 508(i) *et seq.* of the code, upon the question of issuing court-house bonds, and therefore, that section 508(l) would apply for the purpose of ascertaining whether or not two thirds of the qualified voters of the county had voted in favor of the proposed bonds. This case is, in principle, very similar to the case at bar.

- The ruling in 89th *Ga.* is followed in *Howell* v. *Mayor & Council of Athens*, 91 *Ga.* 139, it appearing that the system of registration provided for in the charter of the city of Athens related exclusively to elections for municipal officers. In *Mayor & Council of Decatur et al.* v. *Wilson et al.*, 96 *Ga.* 251, it was held that inasmuch as the mayor and council had "power and authority to provide for the registration of voters prior to any municipal election in said town," it could not, in the absence of any registration

at all, be legally ascertained whether or not, at a particular election, two thirds of the qualified voters had voted "for public schools." In other words, that having the authority to provide for a registration applicable to that election, and having failed to exercise it, the fact that two thirds of those voting at the election voted in favor of the establishment of the proposed school system was not a legal test upon the question.

The decision of this court in the case of *Heilbron et al. v. Mayor & Council of Cuthbert, Ibid.* 312, so far as applicable, is in harmony with the foregoing decisions.

*Judgment affirmed.*