## FLOYD COUNTY *v.* THE STATE OF GEORGIA.

Where an election has been held to determine whether bonds shall be issued by a county, reference must be had to the registration list to ascertain whether two thirds of the qualified voters have assented to the issuance of bonds. The provisions of the general registration act are applicable to all county elections, and, since its passage, reference to the tally-sheets of the last general election is not the legal method of determining the number of qualified voters in the county.

Argued January 21, — Decided February 28, 1901.

Validation of bonds.   Before Judge Henry.   Floyd superior court.   December 14, 1900.

*W. J. Neel, Nat. Harris,* and *C. N. Featherston,* for plaintiff in error.   *Moses Wright, solicitor-general,* contra.

LITTLE, J.   The authorities of Floyd County caused an election to be held on the first day of December, 1900, to determine whether bonds of the county for the total sum of sixty-nine thousand dollars should be issued, of which proposed issue thirty-four thousand five hundred dollars were to be applied to the floating debt of the county, nineteen thousand five hundred dollars to the payment of past due bridge bonds, and fifteen thousand dollars to other bridge bonds thereafter to fall due.   The ascertained and declared result of the election showed that 2,050 votes were cast, 1,955 in favor of the issuance of bonds, and 95 against the issue.   Subsequently the solicitor-general of the Rome circuit, having been notified of the election and its result, under the provisions of an act approved December 6, 1897, presented a petition to the superior court of Floyd county for the purpose of obtaining a judgment confirming and validating the bonds which, it was claimed, the county had authority to issue by virtue of such election.   See Acts 1897, p. 82.   All the requirements of this act were seemingly complied with.   The county commissioners were made parties, filed their

answer, and asked that such affirmance and validation be had. On the hearing no issue of fact was raised, but it was agreed that the total number of votes favorable to the issue of bonds was less than two thirds of the number of voters whose names appeared on the lists of the registration of voters had for the county, this fact being stated in the decision and judgment of the court. The county commissioners claimed, as the result of the election, that the county was authorized to issue the bonds. The solicitor-general insisted that as the number of votes cast for bonds, while amounting to more than two thirds of the number cast at the last general election held in the county, did not amount to two thirds of the qualified voters of the county, because the number voting for bonds was not two thirds of the registered voters, no order of confirmation or validation should be made. The judge, construing and determining but one legal question, to wit, whether, in ascertaining the number of qualified voters necessary to authorize the issue of bonds, the registration lists should be taken as the correct enumeration of such qualified voters, or whether the number of votes which were cast at the last general election in the county, as shown by the tally-sheets, should be accepted as the legal enumeration, adjudged that the registration lists should be taken as the proper enumeration, and ruled that the number of votes cast in favor of the issue of bonds at the election which was held was insufficient to authorize the issue, and refused to confirm and validate the bonds. To this ruling the county excepted. In presenting his case to this court the solicitor-general insisted on two propositions: First, that the assent of two thirds of the qualified voters of the county was not, at the election, given in favor of the issue of bonds. Second, that, even with the assent of two thirds of the qualified voters of the county, no legal issue of bonds could be made to retire and take up a prior issue of bonds made since the adoption of the constitution of 1877, because that instrument provides that the county authorities shall, at the time of the issue, make provision by taxation for the payment of the principal and interest due on such bonds within thirty years, and therefore, in any event, it would be illegal to issue bonds for such an amount as it was contemplated should be used in retiring the bridge bonds theretofore issued, amounting to thirty-four thousand five hundred dollars.

Inasmuch as, in our judgment, for the reasons hereinafter given,

the result of the election did not authorize the issue of any bonds by the county, we do not find it necessary to formally consider and determine the correctness of this second contention. The question thus raised is a very serious and important one, and many strong reasons might be urged to uphold the contention made. A proper construction of the constitutional provision upon which its determination must rest merits, and will doubtless receive, careful consideration when presented in a case in which its proper solution will control. As it can not in this, we confine our decision to the single question passed on by the trial judge, namely: whether, in ascertaining the number of qualified voters whose assent is prescribed by the constitution as a condition precedent to the issue, the tally-sheets of the last general election held in the county afford a legal enumeration, or must the number be determined by the list of registered voters. It is contended that a proper construction of the language of the constitution contemplates that only two thirds of those voting at the election are necessary to sanction an issue of bonds. This is but a statement of the common-law rule of construction, but on investigation it will be found, as was said in the case of *Gavin* v. *Atlanta*, 86 *Ga.* 135, that the authorities generally concur that where the law prescribes how the majority or two thirds shall be ascertained, that method prevails, and the common-law rule does not apply; when the law prescribes how the necessary two thirds shall be ascertained, it is but establishing a rule of evidence by which the determination shall be reached. We think also that there are reasons inherent in our constitution which indicate clearly that it was not the intention of its framers that the two thirds whose assent is declared to be necessary for the legal issue of bonds should be determined by the application of the rule existing at common law. This purpose, I think, can be gathered from a comparison of the several distinct provisions of the same instrument which refer to county and municipal special elections. It is provided, as to the issue of bonds, that the assent of "two thirds of the qualified voters" is necessary. Art. 7, sec. 7, par. 1. In art. 8, sec. 4, par. 1, it is declared that authority may be granted to counties and municipal corporations to establish and maintain public schools by local taxation, but no local law establishing public schools in a county, city, or town "shall take effect until the same shall have been submitted to a vote of the qualified

voters in each county or municipal corporation, and approved by a two-thirds vote of persons qualified to vote at such election." Art. 11, sec. 1, par. 4, which prescribes the manner in which county-sites may be changed or removed, declares that one shall not be removed "except by a two-thirds vote of the qualified voters of the county, voting at an election held for that purpose." Here we find this instrument dealing with county or municipal subjects in three different sections, each contemplating an expenditure of money. In the case of the issuance of bonds, and the establishment of local schools (separate and distinct from the general schools established by the State), which necessarily imposes an increased burden on the taxpayers, it is declared, without qualification, that the bonds shall not be issued nor the schools established without, in the one case, the assent of two thirds of the qualified voters of the county or municipal corporation at an election held for that purpose, and in the other case without the approval of two thirds of the qualified voters at an election held; while a county-site may be removed "by a two-thirds vote of the qualified voters of the county, voting at an election held for that purpose," etc. Is not the inference legitimate, that in withholding the words *voting at an election* in the case of the issuance of bonds and the establishment of local schools, they were intentionally omitted? Certainly, in the paragraph of the instrument prescribing the vote for the change of a county-site the framers of the constitution, by express words, declared the method by which the whole number of voters should be enumerated, and made it conform to the rule of the common law, when a majority or two thirds is specifically required in order that affirmative action may be had. They withheld mention of its application in the other two instances named. When they used words which establish this method in one case, and withheld such words in the others, I am not prepared to say that they did not intend that it should be applied in one case and not in the others, and that it was not thereby intended that the lawmaking power should fix a method by which the necessary two thirds of the qualified voters of the county could be ascertained in those instances where restrictive words were not used. If the words "two thirds" when unqualified mean the same as when qualified, why was the qualification attached? These considerations are suggested as a second reply to the contention that a proper construction of the organic

law, which requires the assent of two thirds of the qualified voters of the county to authorize an issue of bonds, is that two thirds of those voting on such issue is all that is required.

But the main and only question to be decided in this case is, how shall the number of qualified voters in a county be ascertained, so as to determine whether two thirds of such voters have given their assent to the bond issue? Soon after the adoption of the constitution the General Assembly enacted that the tally-sheets of the last general election held in the county should be taken as the correct enumeration of the qualified voters in such county. Acts 1878-9, p. 40; Political Code, § 380. It is also contended, that this provision of law has not been changed by the enactment subsequently made, which provides for the registration of voters, which is now, and since 1894 has been, in force in this State, and that there is nothing in these two acts which affords any reason why one should affect the other; and the legal doctrine that repeals by implication are not favored is invoked. It is unnecessary to refer in detail to the provisions of the law requiring the registration of voters. The general law on the subject can be found in the Political Code, §§ 35, et seq. It declares that "no person shall be permitted to vote in any election in the State, for presidential electors, for members of Congress, for Governor, for State-house officers, for members of the General Assembly, for county officers, county commissioners, for justices of the peace, for constables, for members of the county board of education where chosen by the people, nor in any other popular election to fill any other State or county office now existing or hereafter created, nor in any State or county election *for any purpose whatever,* unless such person shall have been registered as hereinafter provided." Certainly the provisions of this act are broad enough to cover every State and county election, no matter what may be its purpose; and certainly, too, registration is necessary, by its terms, for the exercise of the right of suffrage by a qualified voter. The requirement for registration does not add a qualification. It only serves to identify the persons qualified to vote. *Mayor of Madison* v. *Wade,* 88 *Ga.* 699; Cooley's Const. Lim. 756. It will be noted that the provisions of the code to which we have just referred do not apply to elections held in cities or towns. There is no reason, of which we know, why a general registration might not be provided for all elections held in these

municipalities. There are numerous instances where such provision has been made for particular cities and towns, but none which is applicable to all. The right of a city to issue bonds is given by the constitution on exactly the same conditions that are prescribed for counties. Now, if a city, having no authority to enact a registration ordinance, should seek to issue a series of bonds under an election, which is its legal right, how is the number of qualified voters in that city to be determined? As we have seen, the general law requiring voters to be registered has no application, and registration is not required by the constitution. Under such circumstances, the question is easily determined, by reference to the act of 1879, which in express words is made applicable to cities and towns in which elections of this character have been held. Political Code, § 380. The law prescribed in such cases is that the tally-sheets of the last general election held in that city shall be taken as the correct enumeration of the qualified voters of such city. This act can not, therefore, be said to have been repealed by the general registration act. But has not its application been superseded by the terms of that act, so far as concerns elections held for the purpose by a county? As we have seen, the registration act is directly applicable to counties, and was enacted for the purpose of identifying the qualified voters, and its effect is to so change the law theretofore existing that no person, though otherwise qualified, can vote unless he has duly registered. Certainly the registration book affords a list of the qualified voters more accurately than any other practicable method which could be prescribed, and decisions of this court heretofore made are in effect that the ascertainment of the number of qualified voters must be had by reference to the registration lists. It has been distinctly so ruled in the case of *Gavin* v. *Atlanta*, supra. In that case the City of Atlanta was about to issue and sell bonds for the purpose of building a new system of waterworks. An election to authorize their issuance was specially ordered, and less than two thirds of those who had registered for the election voted in favor of issuing the bonds. The defendant contended that the bonds, having received two thirds of the votes actually cast in the special election, and also two thirds of the number actually cast in the general election, although not two thirds of the registered voters at either election, were valid. The injunction which was sought to restrain the issuance of bonds was refused by the judge

below, and, in reversing that judgment, this court ruled that "whenever the legislature has provided for a registration of voters in a municipality, the number of voters registered thereunder is the true test for ascertaining whether the requisite two-thirds majority of the qualified voters of such municipality has been obtained." "The constitutional provision which requires the assent of two thirds of the qualified voters is mandatory. It would be absurd, under this provision, to hold that the qualified voters of a municipality should register in order that it might be ascertained who are qualified to vote, and then to hold that this registration has no effect in determining the number of qualified voters in the municipality, but that the test should be the number of voters at an election some twelve months prior to that time." Following the *Gavin* case, this court had under consideration the case of the *Mayor of Decatur* v. *Wilson*, 96 *Ga.* 251. The legislature, on the recommendation of the authorities of the town, passed an act to authorize the establishment of a system of public schools in Decatur, and to provide a manner for raising revenue to maintain the same. The act provided for the election required by the constitution, but did not prescribe the mode of ascertaining the number of persons qualified to vote at the election. Subsequently, however, the charter of the town was amended so as to authorize the municipal authorities to provide for a registration of voters prior to any municipal election, to make all needful rules and regulations for the same, and require that no person be permitted to vote unless registered. An election was ordered by the municipal authorities, but no ordinance providing for the registration of voters was passed prior to the election. Two thirds of those who voted at the election voted for public schools, and the municipal authorities were preparing to establish the schools and assess the taxpayers for their maintenance. A petition was filed, alleging that the election was void because no provision had been made for the registration of voters. The injunction sought was granted, and in reviewing that judgment this court ruled, that "it could not, . . in the absence of any registration at all, be legally ascertained whether or not, at an election held under the act, . . two thirds of the qualified voters of the town voted 'for public schools.' It would have been competent for the municipal authorities, by a proper registration ordinance, to have ascertained the whole number of [qualified] voters, . . but as no such ordinance was adopted, and

no other legal means of ascertaining such number existed, the fact that two thirds of those voting at the particular election cast their ballots in favor of the establishment of the school system was not a legal test upon the question," and that the injunction was properly granted.    So that under the *Gavin* case it is distinctly ruled that, when registration has been provided, the number of qualified voters is to be ascertained from that registration; and in the *Wilson* case the rule was even extended further, and is to the effect that when a municipality has been authorized to provide for registration, and holds an election for the establishment of public schools, which requires the approval of two thirds of the qualified voters, and has not established the registration which it was authorized to do, there is no method by which the number of qualified voters in the town can be determined.    Certainly, the rulings in these two cases control the question made here.

At the time of the election in Floyd County the general registration law was in force.    The test, then, for ascertaining the number of qualified voters in the county, by the rulings heretofore made, was a reference to the registration list.    That number could not, because of the application of the registration law, be determined by reference to the tally-sheets of the last general election. There are several cases, subsequent to the decision in the *Gavin* case, in which it was ruled that the number of qualified voters in a municipality was to be determined by reference to the tally-sheets; but an examination shows, in each instance, that no method of registration had been provided, and the line of reasoning on which these decisions are placed is that, as registration was not required to ascertain the number of qualified voters under the constitution and no provision for registration had been made, section 380 of the Political Code, codified from the act of 1879, which prescribes a reference to the tally-sheets of the last general election, was applicable.    See *Kaigler* v. *Roberts*, 89 *Ga.* 476; *Howell* v. *Athens*, 91 *Ga.* 139; *Carver* v. *Dawson*, 99 *Ga.* 7.    So that the established rules on this subject are as follows: If within the county or municipality a system of registration has been provided by which the number of qualified voters of the county or municipality can be determined, the question whether two thirds of the qualified voters of the county or municipality voted for bonds must be determined from an inspection of the registration list.    If the municipality has

been invested by the legislature with authority to put a system of registration in force, and an election is held without having provided a system of registration, no means of determining whether two thirds of the qualified voters did, in fact, cast their votes for bonds exists. If no registration law is applicable and no authority to establish one has been conferred on the municipality, and the election for bonds is held, then the question as to whether two thirds of the qualified voters voted in favor of the issuance of bonds is to be decided by reference to the tally-sheets of the last general election. It is, therefore, our conclusion that the judge did not err in refusing to confirm and validate the issue of bonds.

*Judgment affirmed. All the Justices concurring, except Simmons, C. J., and Cobb, J., absent.*