McKNIGHT *et al. v.* MAYOR AND COUNCIL OF SENOIA.

When an election is held in a municipality to determine whether two thirds of the qualified voters will give their assent to the issuance of bonds, and there is no law authorizing or requiring a registration of the voters of the town, and at the election held the total number of votes cast exceeds the total number cast at the last general election in the town, as shown by the tally-sheets of that election, and no question is raised as to the right of any of the voters to participate in the bond election, the assent of two thirds of the qualified voters is not obtained where the number voting in favor of bonds is less than two thirds of the votes cast at the bond election.

Argued June 16, — Decided July 19, 1902.

Validation of bonds. Before Judge Harris. Coweta superior court. April 28, 1902.

*H. A. Hall*, for plaintiffs in error.
*T. A. Atkinson*, solicitor-general, and *R. W. Freeman*, contra.

Cobb, J. An election was held in the town of Senoia to determine whether the assent of two thirds of the qualified voters could be obtained to an issuance of bonds by that municipality. 133 votes were cast, 85 for and 48 against bonds. From the tally-sheets of the last general election held in the town, preceding the bond election, it appeared that 120 persons had voted. Upon an application to the judge of the superior court to validate the bonds, under the act of 1897 (Acts 1897, p. 82), an order was passed declaring the bonds valid, over the objection of certain citizens that the assent of two thirds of the qualified voters had not been obtained. The constitution declares that a municipal corporation shall not incur a debt of the character sought to be incurred in the present case, " without the assent of two thirds of the qualified voters thereof, at an election for that purpose, to be held as may be prescribed by law." Civil Code, § 5893. The General Assem-

bly has declared that in determining whether two thirds of the qualified voters voted in favor of the issuance of bonds "the tally-sheets of the last general election held in said county, municipality, or division shall be taken as a correct enumeration of the qualified voters thereof." Pol. Code, § 380. The local act under which the election in the present case was held declared, "The election for mayor and council last preceding in said town shall be taken and considered to determine the number of voters in said town." Acts 1901, pp. 630, 633, sec. 10. It has been held that the rule prescribed in the Political Code, which determines the question as to whether two thirds of the qualified voters have given their assent to the issuance of bonds by reference to the tally-sheets of the last general election, is to be applied only in cases where there is no better or more satisfactory test in reference to the question; and that therefore, where there is a law authorizing or requiring the registration of voters for an election to be held on the question of the issuance of bonds, the result of the election is to be determined by a reference to the list of voters registered for the election, and not to the tally-sheets of the last general election. *Gavin v. Atlanta*, 86 *Ga.* 132; *Mayor v. Wade*, 88 *Ga.* 699; *Mayor v. Wilson*, 96 *Ga.* 251; *Floyd County v. State*, 112 *Ga.* 794. Where there is no better test than that prescribed in the Political Code, the rule there laid down may be followed. *Kaigler v. Roberts*, 89 *Ga.* 476; *Howell v. Athens*, 91 *Ga.* 139; *Heilbron v. Cuthbert*, 96 *Ga.* 312; *Carver v. Dawson*, 99 *Ga.* 7; *Brand v. Lawrenceville*, 104 *Ga.* 487; *Slate v. Blue Ridge*, 113 *Ga.* 646 (2). The provision in the local act of 1901, in reference to the test to be applied in determining whether two thirds of the qualified voters have given their assent to the issuance of bonds, is in substance the same as that laid down in the Political Code. See, in this connection, *Brand v. Lawrenceville*, supra. The two provisions are therefore to be construed simply as prescribing rules to be followed in the absence of a more satisfactory and better test. 133 votes were cast at the bond election. There is no question raised as to the right of any of these voters to vote at this election. It is to be presumed, therefore, that there were, on the date of the election, at least 133 qualified voters in the town of Senoia. If this is true, the issuance of bonds by the town without the assent of two thirds of this number would be a palpable violation of the provisions of the constitution of the State.

The fact that there can be and was in the present case a larger number of persons qualified to vote in the bond election than actually voted in the last general election conclusively shows that the test prescribed in the Political Code can not always be followed, and ought never to be followed when the facts are such that to apply the test would result in a direct violation of the constitution. Certainly the court should not attribute to the General Assembly the intention of prescribing a test which would authorize an issuance of bonds when so doing would be in direct violation of the constitution. If the registration lists, in cases where registration is required, should be looked to in determining whether two thirds of the qualified voters have given their assent to the issuance of bonds, certainly in cases where no registration is required the total number of votes cast, when no question is raised as to the right of any voter to participate in the election, should be looked to to determine whether the requisite number of voters have given their assent. If the total number of votes cast is less than the total number cast at the last general election as shown by the tally-sheets, then it may be safely presumed that there has been no change in the population of the town, and the enumeration of voters as shown by the tally-sheets of the last general election may be followed. But if it appears that the total number of votes cast in the election is greater than the number cast at the last general election, and no question is raised as to the right of any voter to participate in the election, certainly it can not be said that the assent of two thirds of the qualified voters has been obtained to the issuance of bonds when the total number voting in favor of the issuance of such bonds is less than two thirds of those actually voting. If a registration of the voters has been authorized or required, then the list of registered voters is conclusive on the question as to how many qualified voters there are. If no registration is required, or there is no other satisfactory means of ascertaining who are the qualified voters, then if the total number of votes cast at the bond election is less than the total number cast at the last general election, two thirds of the votes cast at the last general election will be presumed to be two thirds of the qualified voters of the town. If there is no registration, and the total number of votes cast at the bond election is greater than the total number cast at the last general election, and no question is raised as to the right of any voter to participate

in the election, the number of votes actually cast at the bond election will be considered as conclusive on the question of how many qualified voters there are in the town on that day. While this question was not involved directly in the case of *Bell* v. *Americus*, 79 *Ga.* 152, the conclusion now reached was there stated by Mr. Justice Blandford, who used the following language: "We think that, under the act referred to, the requisite number in favor of the issuing of bonds is at least two thirds of the number of qualified voters at the preceding election, and also two thirds of the qualified voters at the election held to determine that question."

The judge erred in entering an order validating the bonds.

*Judgment reversed. All the Justices concurring, except Lewis, J., absent.*