## GOOLSBY *et al. v.* STEPHENS *et al.; et vice versa.*

1. Under art. 7, sec. 7, par. 1, of the constitution of this State (Civil Code (1910), § 6563), as amended (Acts 1918, p. 99), no municipality can incur any new debt, except for temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of 1 per centum of the assessed value of the taxable property therein, without the assent of two thirds of the qualified voters thereof voting at an election for that purpose; and said two thirds so voting must be a majority of the registered voters of said municipality.

2. Under this constitutional provision there must be a registration of the qualified voters in such municipality; and where an election is held for the purpose of issuing bonds, in the absence of provision for such registration and of such registration, such election is null and void, as it is impossible to determine, without such registration, that a majority of the registered voters of the municipality have given their assent to the creation of such indebtedness.

3. Under said constitutional provision, all laws, charter provisions, and ordinances heretofore passed for special registration of the voters of counties, municipal corporations, and other political divisions of this State, to pass upon the issuance of bonds by said divisions, are null and void; and the General Assembly is without power to pass any law providing for such special registration, but can only provide for general registrations to cover all elections in such political divisions.

4. Under the above rulings it follows that the election held in the City of Forsyth to determine whether or not bonds should be issued for paving streets and sidewalks of said city was null and void, because at the time of the election there was no legal registration of the qualified voters of said city and no provision of law for such registration, the general county registration not being applicable to such elections.

5. The court erred in ruling, under this constitutional provision, that resort should be had to the tally-sheets of the last general election held in said city, to determine whether two thirds of the qualified voters had voted in favor of the issuance of said bonds; and as said election was void, the judge likewise erred in requiring, by a mandamus absolute, the mayor and aldermen of said city to declare the result of said election.

Nos. 3302, 3303. MAY 4, 1923.

Mandamus. Before Judge Searcy. Monroe superior court. June 1, 1922.

R. B. Stephens and others filed their petition for mandamus against the mayor and aldermen of the City of Forsyth, and made this case: They are citizens and taxpayers of said city. James A. Tribble is mayor and L. O. Hollis, and five others are aldermen thereof. On April 24, 1922, an election was held in said city to determine the question whether bonds should be issued by said municipality for street improvements. Said election was held under the same rules and regulations as govern elections for officers of said city. The returns of said election were made to the mayor and aldermen, who consolidated them. There were 267 votes cast in favor of bonds, and 100 votes against bonds. All citizens of said city who have resided in the County of Monroe for six months immediately next preceding the election, and within the limits of the city for thirty days immediately preceding the election, who are entitled to vote for members of the General Assembly, and have paid all taxes required of them by said city which may be due, are qualified to vote. No authority to require registration has been conferred on said city by its charter, and there is no ordinance requiring or providing for registration of voters. In 1920 the list of the then qualified voters of the Forsyth district of Monroe County was made up and filed with the clerk of the superior court as required by law, which was the official list of such voters, subject to be increased by addition of voters who might register and qualify under the general laws, and to be decreased by such voters as might subsequently become disqualified by death, removal from the county, non-payment of taxes, or other legal causes. Said city lies wholly within said Forsyth district, and said district embraces territory and voters other than those who reside in said city. From this general, official list of registered voters the mayor and aldermen caused to be made up a list of all voters residing within the limits of Forsyth, and notation made thereon of all voters who since their registration had become disqualified to vote in said municipality. Said list was made solely for the convenience of the managers of said election in determining whether a voter was qualified or not. Said list showed 550 registered voters within said city, and showed that of this number 44 were disqualified to vote in said bond election, for the reason that at the time of the election they did not reside in said city or had failed to pay taxes due the State

and county for 1921, and there were two voters on said list who had failed to pay their city taxes for said year, making a total of 46 voters originally on said list who had since become disqualified and had not qualified up to the time the polls closed. The last general election held in said city prior to this election was on the first Wednesday in December, 1921, being the regular election for mayor and. aldermen, the tally-sheets of which show that there were only 49 votes cast. In said bond election there were 367 votes cast, of which 267 were in favor of bonds and 100 against bonds. The 267 votes in,favor of bonds were a majority of the qualified voters of said city, as shown by the tally-sheets of the last preceding general election, and a majority of the legally registered and qualified voters of said city, as shown by the registration list prepared for this election by the mayor and aldermen of the city. It is the duty of the mayor and aldermen to declare the result of said election in favor of the issuance of said bonds, which they have failed and refused to do. Plaintiffs pray for a mandamus requiring them to declare the result of said election in favor of the issuance .of said bonds.

The defendants demurred to said petition, on the grounds: (1) that it " fails to set out a cause of action authorizing the issuing of the writ of mandamus;" (2) " that it fails to allege that a majority of the registered voters of the county voted for the bonds, this being absolutely necessary under the requirements of of the constitution of the State, as amended in 1918;" (3) because the petition shows that there were 550 registered voters in the City of Forsyth, as shown by the registration list used by the managers in said election, and only 267 voted for the bonds, this not being a majority of the registered voters; (4) because the petition asks that mandamus issue compelling the mayor and aldermen to declare a particular result as the result of said election. The judge made no ruling sustaining or overruling the demurrer. In their answer the defendants denied that .the list of registered voters prepared by the mayor and aldermen for said election showed any disqualifications of voters, and alleged it showed 554 registered voters in the city. They further alleged that for want of information they could neither admit nor deny the allegation that the tally-sheets of the general election for mayor and aldermen in December, 1921, showed there were only

49 votes cast in said election. They admitted they made from the general registration books the list of all the registered voters of said city and furnished the same to the managers of said bond election; and all parties agreed that it should be taken as correct and used as the proper registration list for said election, and there was no other evidence before said managers as to the number of registered voters in the city. After the returns were made to the mayor and aldermen the plaintiffs filed with the mayor and aldermen a request that they purge said registration list and strike therefrom the names of some 40-odd voters, in order to make it appear that said 267 persons voting for bonds constituted a majority of the registered voters of the city, which the mayor and aldermen, by a vote of 4 to 2, refused to do. A motion was then made to declare the result of said election in accordance with said registration list, when the mayor, who was presiding, arbitrarily refused to entertain the motion, and the meeting adjourned. They denied they ever refused to declare the result of said election, and alleged that they were ready at any time to do so, but they should be allowed to exercise their judgment in ascertaining what is the proper result. They denied that the 44 persons mentioned in the petition were disqualified from voting in said election. They charged that 28 of the 267 persons voting for bonds were illegal voters, because never registered until after the voting was actually going on, they being permitted to register after the polls were open. With these illegal votes eliminated there were only 239 votes cast in favor of bonds.

R. C. Goolsby Sr. and 22 others, citizens and taxpayers of said city, intervened and opposed the declaration of the result of the election to be in favor of bonds. They alleged that those opposed to bonds and those in favor of bonds, including petitioners, agreed that the list prepared by the mayor and aldermen should be used as the list of registered voters of the city in said election. This list was the only evidence obtainable as to who were registered voters. These intervenors set up the same facts as were set up in the answer of defendants. The defendants and intervenors insisted that there were questions of fact to be passed upon, and requested the court to submit these to a jury. The court held that the answer of the defendants to paragraph 11 of the petition was evasive, and amounted to an admission of the fact that the tally-

sheets of the last general election in the city showed that 49 votes were cast at said election. Plaintiffs moved the court to make the mandamus absolute upon the pleadings. The court granted this motion, requiring the mayor and aldermen "to declare the result of said election in conformity to the following rules, to wit: If the consolidated returns of said election as made by the managers thereof show that two thirds of the voters voting at said election voted in favor of the issuance of bonds, and that said two thirds so voting for bonds were a majority of the qualified voters of said municipality, as shown by the tally-sheets of the last general election, that said defendants declare the result of said election in favor of the issuance of said bonds. If the consolidated returns of said election show that those voting in favor of the issuance of said bonds did not constitute two thirds of the voters voting at said election, or if those voting in favor of bonds did not constitute a majority of the qualified voters of said municipality as shown by the tally-sheets of the last general election, that said defendants declare the result of said election against the issuance of said bonds." The intervenors assign as error: (1) the refusal of the court to sustain the demurrer; (2) the refusal to pass the case over until the next term, in order to allow a jury to pass on the issues of fact; (3) the ruling that there were no material issues of fact involved; (4) the ruling that the list of voters taken from the county registration books and used by the managers in the election was illegal, and that it could not be used or considered for the purpose of determining whether a sufficient number of voters voted for bonds to authorize their issuance; (5) the ruling that the question whether a sufficient number of voters had voted to carry the bonds must be determined alone by reference to the tally-sheets of the last general election immediately preceding said bond election; (6) the judgment making the mandamus absolute and requiring the mayor and aldermen to declare the result of said election by reference to the number of votes cast for bonds and the tally-sheets of the last election before said bond election; (7) the ruling that the result should be declared in favor of bonds if it appeared that two thirds of the voters voting in said election voted for bonds and said two thirds were a majority of the qualified voters of said city as shown by said tally-sheets.

· The plaintiffs objected to making of intervenors parties defendant, on the ground that they were not proper parties and had no right to appear and file. an answer. The court overruled the objection, and permitted the intervenors to be made parties defendant. Plaintiffs, in their cross-bill of exceptions, assigned error on this ruling. The plaintiffs offered an amendment in which they set up that the act of Aug. 20, 1918, proposing an amendment to par. 1, sec. 7, art. 7 of the constitution of this State (Ga. Laws 1918, p. 99) was unconstitutional and void, for the reasons: (a) it violates par. 8, sec. 7, art. 3 of the constitution, which provides that "no law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof;" (b) it violates par. 1, sec. 1, art.· 13 of the constitution, which provides that " the General Assembly . . shall . . provide for a submission of such proposed amendment or amendments to the people at said next general election; and if the people shall ratify such amendment or amendments by a majority of the electors qualified to vote for members of the General Assembly, voting thereon, such amendment or amendments shall become a part of this Constitution;" (c) it violates par. 1, sec. 1, art. 13 of the Constitution, which provides that " any amendment or amendments to this Constitution may be. proposed in the Senate or House of Representatives; and if the same shall be agreed to by two thirds of the members elected to each of the two houses, such proposed amendment or amendments shall be entered on their journals, with the yeas and nays taken thereon." The court disallowed this amendment, and the plaintiffs complained also of this ruling.

*A. M. Zellner* and *Reagan & Reagan,* for Goolsby et al.

*Willingham & Willingham* and *Cleveland & Goodrich,* contra.

HINES, J. (After stating the foregoing facts.)

1. This case involves the construction of art. 7, sec. 7, par. 1, of the constitution of this State, as it now stands after the amendment of 1918. Acts 1918, p. 99. This provision of the constitution, prior to this amendment, was this: · " The debt hereafter incurred by any county, municipal corporation, or political division of this State, except as in this Constitution provided for, shall not exceed seven per centum of the assessed value of all the taxable property therein, and no such county, municipality, or

division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not to exceed one fifth of one per centum of the assessed value of taxable property therein, without the assent of two thirds of the qualified voters thereof at an election for that purpose, to be held as may be prescribed by law." Civil Code, § 6563. Under this provision as it stood before this amendment, a municipal corporation could not incur any new debt, except for temporary loans to supply casual deficiencies of revenue, " without the assent of two thirds of the qualified voters thereof at an election for that purpose." The effect of this provision was to require the assent of two thirds of all the qualified voters of the municipal corporation, before it could incur a new debt. It was not sufficient to get the assent of two thirds of those voting at an election held for the purpose of incurring a new debt; but the requirement of this provision, before the above amendment, demanded the assent of two thirds of all the qualified voters of the municipality, before the latter could incur a new debt. It followed that qualified voters of the municipality, who were opposed to incurring the new debt, need not vote, in order to defeat it. A voter's refraining from voting was equivalent to a vote against the creation of the new debt.

The constitution did not provide the method of ascertaining whether two thirds of the qualified voters had given their assent to the creation of a new debt. This was left to the legislature. So the legislature passed the act of Oct. 14, 1879 (Acts 1878-9, p. 40), now embraced in the Civil Code (1910), § 443, which declares: " In determining the question whether or not two thirds of the qualified voters in said county, municipality, or division voted in favor of the issuance of said bonds, the tally-sheets of the last general election held in said county, municipality, or division shall be taken as a correct enumeration of the qualified voters thereof." But " whenever the legislature has provided for a registration of voters in a municipality, the number of voters registered thereunder is the true test for ascertaining whether the requisite two-thirds majority of the qualified voters of such municipality has been obtained at an election for which such registration was provided, and in which the assent of such a majority was requisite to empower the municipality to incur an indebted-

ness under the constitution of 1877." *Gavin* v. *Atlanta,* 86 *Ga.* 132 (12 S. E. 262); *Mayor &c. of Madison* v. *Wade,* 88 *Ga.* 699 (16 S. E. 21); *Mayor &c. of Decatur* v. *Wilson,* 96 *Ga.* 251 (23 S. E. 240); *City Council of Dawson* v. *Waterworks Co.,* 106 *Ga.* 696, 730 (32 S. E. 907); *Floyd County* v. *State,* 112 *Ga.* 794, 802 (38 S. E. 37); *Slate* v. *Blue Ridge,* 113 *Ga.* 646 (38 S. E. 977). The registration provided for must be applicable to all municipal elections, or at least must include elections for the purpose of incurring a new debt. *Carver* v. *Dawson,* 99 *Ga.* 7 (25 S. E. 832); *Kaigler* v. *Roberts,* 89 *Ga.* 476 (15 S. E. 542); *Howell* v. *Athens,* 91 *Ga.* 139 (16 S. E. 966); *City of Thomasville* v. *Thomasville Light &c. Co.,* 122 *Ga.* 399 (50 S. E. 169); *Gracen* v. *Savannah,* 142 *Ga.* 141 (82 S. E. 453). Where there is no better test than that prescribed in this section of the Code, the rule laid down therein may be followed. *McKnight* v. *Senoia,* 115 *Ga.* 915, 916 (42 S. E. 256); *Mays* v. *City of Jackson,* 147 *Ga.* 556 (94 S. E. 1006). So whenever the legislature confers upon cities the power to provide for registration of voters at elections held to determine whether or not a new debt shall be incurred, and such registration is provided for by proper ordinances, this furnishes a better test to determine whether the requisite majority of voters voted in favor of such debt, than does this section of the Code. So the general registration law is applicable to all county elections, and, since its enactment, reference to the tally-sheets of the last general election is not the legal method of determining the number of qualified voters in the county voting in an election to determine whether a county debt shall be incurred or not. *Floyd County* v. *State,* supra. We have referred to these decisions to show that the method of this section of the Code is not exclusive, and must yield to any better test fixed by law. The application of this principle will be made, after we have considered the scope and effect of the amendment of 1918 to the provision of the constitution which we have under consideration.

The pertinent portion of art. 7, sec. 7, par. 1, of the constitution of this State, as amended in 1918, is as follows: " The debt hereafter incurred by any county, municipal corporation or political division of this State, except as in this Constitution provided for, shall not exceed seven per centum of the assessed value of all the taxable property therein, and no such county, munic-

ipality, or division shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not exceeding one fifth of one per centum of the assessed value of the taxable property therein, without the assent of two thirds of the qualified voters thereof voting at an election for that purpose to be held as prescribed by law, provided said two thirds so voting shall be a majority of the registered voters; and provided further that all laws, charter provisions, and ordinances heretofore passed or enacted providing special registration of the voters of counties, municipal corporations and other political divisions of this State to pass upon the issuance of bonds by such counties, municipal corporations and other political divisions are hereby declared to be null and void; and the General Assembly shall hereafter have no power to pass or enact any law providing for such special registration." This amendment (Ga. Laws 1918, p. 99) made some vital changes in the original provision in the constitution of 1877 upon the subject of incurring new debts by counties, municipal corporations, and other political divisions of the State. Instead of requiring the assent of two thirds of all qualified voters in these political divisions to the creation of such debts, this provision, as amended, requires the assent of only two thirds of the qualified voters thereof *voting* at an election for this purpose, to be held as prescribed by law, provided said two thirds so voting shall be a majority of the registered voters. This is one of the drastic changes of this amendment. The assent of two thirds of the qualified voters voting, provided they are a majority of the registered voters, is now only required to authorize the debt. To incur the debt, the county, municipality, or other division must have two thirds of the qualified voters voting, and a majority of the registered voters.

The next vital change is the method of determining whether the assent of two thirds of the qualified voters, and a majority of the registered voters, has been secured. Resort to the tally-sheets of the last general election is no longer the method. A resort to that method would be wholly ineffective. This amendment to the constitution contemplates registration of the voters. While resort to these tally-sheets was formerly available to ascertain whether two thirds of the qualified voters favored the creation of a debt, it furnishes no means for ascertaining whether

a majority of the registered voters favored the incurring of the debt. Without registration it is impossible to determine whether a majority of the registered voters favor the debt. But it may be said that this provision does not apply where there is no provision of law for registration. This would make the operation of a constitutional provision depend upon the whim of the legislature. The constitution is the supreme law. It supersedes all legislation in conflict with its provisions. This provision is supreme. It demands, by implication, registration before a municipal corporation 'can contract a debt, because a majority of the registered voters must give their assent to its creation. Without registration there can be no election for this purpose. This is in accordance with the provision of the constitution fixing the qualification of voters. Under art. 2, sec. 1, par. 1, of the present constitution, " only those persons shall be allowed to vote who have been first registered in accordance with the requirements of law." Civil Code (1910), § 6395. Now registration is one of the qualifications of voters; formerly it was the means of this identification. *Mayor &c. of Madison* v. *Wade,* supra; *Chapman* v. *Sumner Con. School Dist.,* 152 Ga. 456 (109 S. E. 129).

The next change is " that all laws, charter provisions, and ordinances heretofore passed or enacted providing special registration of the voters of counties, municipal corporations and other political divisions of this State to pass upon the issuance of bonds by such counties, municipal corporations and other political divisions are . . declared to be null and void; and the General Assembly shall hereafter have no power to pass or enact any law providing for such special registration." Thus all special registrations are done away with; and the power of the legislature to provide for them has been withdrawn. Hereafter elections must be held under general registrations applicable to all elections to be held in the given political divisions. Moreover, a municipal election can not be held under a county registration. *Floyd County* v. *State,* supra. Such an election must be held under general municipal registration.

So we reach the conclusion, that, as there was no charter provision or ordinance for registration of the voters in the City of Forsyth, and in fact no registration of voters within the city, the election for the purpose of issuing its bonds was null and

void. The court erred in holding that the tally-sheets of the last general election in that city could be looked to to determine whether or not two thirds of the qualified voters and the majority of the registered voters of that city had voted for these bonds. In consequence of this ruling, the court erred in making the mandamus absolute.

2. Two questions are raised in the cross-bill of exceptions. Certain citizens and taxpayers of the City of Forsyth intervened in this cause; and asked to be made defendants for the purpose of opposing the grant of the mandamus. The plaintiffs objected to the intervenors being made parties, on the ground that they were not proper parties. The court overruled this objection, and passed an order making the intervenors parties defendant; and the plaintiffs, in their cross-bill of exceptions, assign error on this ruling. But in their brief counsel for the plaintiffs in error in the cross-bill expressly waive the decision of this point, in order that the court may pass upon the main contentions raised in the direct bill of exceptions. For this reason we make no decision upon this question.

The second question raised in the cross-bill of exceptions is this: the plaintiffs offered an amendment to their petition, in which they alleged that a portion of section 1 of the act of Aug. 20, 1918, proposing to amend art. 7, sec. 7, par. 1, of the State constitution, is unconstitutional and void, because in conflict with art. 3, sec. 7, par. 8, of the State constitution, which declares that " no law or ordinance shall pass which refers to more than one subject-matter, or contains matter different from what is expressed in the title thereof." This court has twice held that this provision of the constitution is not applicable to proposals by the legislature to amend the constitution. *Cooney* v. *Foote,* 142 *Ga.* 647 (83 S. E. 537, Ann. Cas. 1916B, 1001) ; *McCall* v. *Wilkins,* 145 *Ga.* 342 (89 S. E. 219). We have been asked to review and overrule the case of *Cooney* v. *Foote.* This would be useless unless *McCall* v. *Wilkins* were overruled. Furthermore, we see no reason why these cases should be overruled.

The next point raised in the cross-bill of exceptions is that this amendment was not adopted in accordance with art. 13, sec. 1, par. 1, of the State constitution, which provides for the submission to the people for adoption of proposed amendments to the con-

stitution of this State. The point made is that the only portion of this proposed amendment which was submitted to the people for ratification is that printed upon the form of ballots to be cast by those in favor of its ratification. This point is not well taken. Section 3 of the act proposing this amendment provides that the entire amendment should be submitted to the electors of the State for ratification or rejection. It was not necessary that the entire amendment should have been printed on the ballots. The reference on the ballots to the proposed amendment is to inform the voters what they are voting for as an amendment to the constitution; and such reference is sufficient when it contains enough to enable the voters to ascertain for what amendment they are voting. When this is done, the voters can be fully informed as to its full provisions by looking to the proposed amendment. What is adopted as an amendment to the constitution is not what is printed on the ballots, but what is contained in the proposal for amending the constitution. The submission of the proposed amendment was sufficient. So we are of the opinion that this attack upon the constitutionality of this amendment is not well taken.

*Judgment reversed on the main bill of exceptions, and affirmed on the cross-bill. All the Justices concur, except Russell, C. J., and Beck, P. J., dissenting.*

RUSSELL, C. J., dissenting. The statement of facts recites the different stages and the incidents of this litigation, and a review of the record shows that the controlling question in the case is whether the trial judge adopted the proper method of ascertaining whether such a legal election had been held by the qualified voters of the City of Forsyth, as required the declaration of the result of that election to be enforced by mandamus absolute. It seems that in the election which was held on the 24th day of April, 1922 (there being no dispute that the question of bonds or no bonds was duly advertised and submitted to the voters), 267 votes were cast in favor of the bonds and 100 votes were cast against the bonds. According to the list made at the instance of the city council, there were 550 voters within the City of Forsyth as shown by the registration list of Monroe County, and of this number 46 appeared for one reason or another to be disqualified; and the contention is vigorously pressed that the 267 votes cast in favor of

the issuance of the bonds is not such a two-thirds vote as is required by paragraph 1, section 7, article 7 of the constitution, as amended by the amendment submitted to the voters of this State in 1918 (Acts 1918, p. 99). I think that the trial judge properly overruled this contention, and correctly fixed the method by which the result of the election should be ascertained upon the provisions of section 443 of the Code of 1910. That section is as follows: " In determining the question whether or not two thirds of the qualified voters in said county, municipality, or division voted in favor of the issuance of said bonds, the tally-sheets of the last general election held in said county, municipality, or division shall be taken as a correct enumeration of the qualified voters."

The contention of the plaintiffs in error is, that, inasmuch as 267 is not two thirds of the qualified voters of Forsyth as shown by a copy of the registration lists of those voters of Monroe County who reside within the limits of Forsyth, two thirds of the qualified voters of the City of Forsyth, as required by law, had not voted in favor of the bond issue. Even if this argument be valid, if there was any provision of law requiring the registration of voters in municipal elections in the City of Forsyth it is not in point in the present case, for the reason that an examination of the charter of the City of Forsyth discloses that there is no provision for municipal registration in this city.

I dissent from the ruling of the majority, because one of the most substantial achievements resulting from civil liberty is the right of local self-government in the exercise of home rule by subordinate divisions existing within and subordinate to a commonwealth whether State or National. However, I would agree with the result reached by the majority were I convinced, as they are, that the charter of the City of Forsyth and the election held in pursuance thereof are null and void. I dissent because I do not think that it was the purpose of the amendment of 1918 to the constitution to affect vested rights of municipal corporations previously created by the General Assembly of the State, and certainly not to divest them of any rights hitherto enjoyed by any of these creatures of the State, or to place any new burden upon them, without express reference to that subject. As said by Mr. Justice Lumpkin, in *Heard* v. *State*, 113 *Ga.* 444 (39 S. E. 118), the existence of doubt as to the constitutionality of a legislative act

(and such is the charter of Forsyth) is not merely strong argument in favor of its constitutionality, but "settles its validity." The main purpose of the amendment of 1918 to the constitution, as it appears to me, was to do away with special registrations for the voters of counties, municipalities, and other political subdivisions of this State to pass upon the issuance of bonds; and as there was no special registration in this case, that question is not involved in the decision of the cause now before us. The amendment to article 7, section 7, paragraph 1, changed the constitution by doing away with the special registration which had been provided by law subsequently to the adoption of the original section and paragraph in 1877; for at the time of the adoption of the constitution there was no registration law in Georgia, and no reference whatever is made to registration as a prerequisite to voting in the constitution as originally adopted in 1877.

Under the ruling of the majority each municipality will now be compelled to provide for the registration of its voters; and I apprehend the decision of the majority may cause difficulties and confusion not necessary to be now specifically pointed out. The fact that the amendment of 1918 refers to registered voters does not ex proprio vigore, it seems to me, do more than include within its provisions those municipalities which in 1918 had the authority to provide for municipal registration. It cannot by mere inference be assumed that the General Assembly and the people, in adopting the amendment of 1918, intended to extend the operation of a law which was intended primarily to prevent municipalities from ordering special registrations to hold elections upon the subject of bond issues, and to provide that a *majority* of the voters voting (provided such majority of voters was two thirds of those registered) could carry a bond issue through rather than *two thirds* as determined by the lists and tally-sheets of the last preceding election, as provided by § 443 of the Code, so as to preclude the issuance of bonds on the part of such municipalities as had no authority to register voters. Nor does it appear to me that there must be inferred a purpose to repeal the plain provisions of section 443 of the Code, which already provided for all municipalities whose charters contained no provision authorizing or requiring the registration of municipal voters. It seems plain to me that this case ought to be decided in accordance with the pro-

visions of § 443, and that there is no constitutional difficulty in deciding it in accordance with the rule therein stated.

I do not agree with the majority, because I maintain that, so far as municipal elections in the City of Forsyth are concerned, they are unaffected by the constitutional amendment to which we have referred; whatever may be the rule as to municipalities which are empowered to make provision for the registration of voters in elections held in the municipality. The amendment to paragraph one, section seven, article seven of the constitution, adopted in 1918 (Acts 1918, p. 100), provides that no municipality "shall incur any new debt without the assent of two thirds of the qualified voters thereof voting at an election for that purpose to be held as prescribed by law, provided said two thirds so voting shall be a majority of the registered voters, and provided further that all laws, charter provisions, and ordinances heretofore passed or enacted, providing special registration of the voters of counties, municipal corporations, and other political divisions of this State to pass upon the issuance of bonds by such counties, municipal corporations, and other political divisions are hereby declared to be null and void; and the General Assembly shall hereafter have no power to pass or enact any laws providing for such special registration." Since the City of Forsyth has no municipal or local registration law nor any charter provision which requires or authorizes the voters of that city to be registered, it is plain that the method of ascertaining whether two thirds of the qualified voters which the law requires have voted in favor of any bond issue affecting that municipality must be determined by section 443 of the Civil Code. *Gavin* v. *Atlanta*, 86 *Ga.* 132 (12 S. E. 262); *Farmer* v. *Thomson*, 133 *Ga.* 101 (65 S. E. 180). As said by Judge Little in *Floyd County* v. *State*, 112 *Ga.* 794-802 (38 S. E. 37): " If no registration law is applicable and no authority to establish one has been conferred on the municipality, and the election for bonds is held, then the question as to whether two thirds of the qualified voters voted in favor of the issuance of the bonds is to be decided by reference to the tally-sheets of the last general election."

The facts of this case distinguish it from *Mays* v. *City of Jackson*, 147 *Ga.* 556 (94 S. E. 1006), in that in the present case there is no provision of law for the registration of voters in the City

of Forsyth, whereas under the charter of the City of Jackson authority to provide for the registration of voters was vested in the mayor and aldermen; and this court followed the ruling in *Floyd County* v. *State,* supra, in which it was held that " If the municipality has been invested by the legislature with authority to put a system of registration in force, and an election is held without having provided a system of registration, no means of determining whether two thirds of the qualified voters did in fact cast their votes for bonds exists." In the same case from which the rule above quoted was taken it was also held, as hereinabove quoted, that where no authority to establish a registration law has been conferred upon the municipality, and an election for bonds is held, then the question as to whether two thirds of the qualified voters voted in favor of issuance of the bonds is to be decided by reference to the tally-sheets of the last general election. The same distinction as exists between this case and the *Mays* case has been pointed out by this court in numerous decisions. It is adverted to in the *Mays* case.

It is clear, then, that the trial judge adopted the correct rule for ascertaining whether or not two thirds of the qualified voters of Forsyth voted in favor of the proposed bond issue, and, since it appeared that only 49 votes were cast in the last general election preceeding the voting upon the issue of bonds, that 267 (even after deducting 46 votes that were challenged) were more than two thirds of the qualified voters of the city; and it is equally plain, since only 100 votes were cast against the issue of bonds, that more than two thirds of those voting in the election of April 24 voted for the proposed issue, even after deducting the 46 votes alleged to have been illegal.

Complaint is made that the judge should have submitted the case to a jury, inasmuch as there were issues of fact involved. The court refused to pass the case until the next term of court for trial by jury, holding that the issues of fact suggested were immaterial, and that the court could decide the case upon the pleadings alone. The holding of the court as to this matter was not error; for, under the issue as to which the parties agreed, there was only one real issue in the case, and this single issue presented only the question of law which we have considered. In other words, under the material facts as to which there was any

dispute, was the number of qualified voters to be determined by a so-called list of the registered voters of Forsyth, which was made without authority of law, to be used in determining who were the voters qualified to vote in the bond election, or was the enumeration of the qualified voters of Forsyth to be determined by the tally-sheets of the preceding election? As shown above, the law fixes the latter rule as the method of determining who are the qualified voters in cities and towns in which no provision has been made by law for registration, and consequently no matter of fact bearing upon this issue of law was material in the investigation.

I am authorized by Mr. Presiding Justice Beck to say that he concurs in the views expressed in this dissent, and in the opinion that the judgment of the lower court should be affirmed.