*J. M. Lang* and *Y. A. Henderson,* for defendant.

---

## FAIRBURN SCHOOL DISTRICT *v.* McLARIN.

The provisions of section 145 of the Code of School Laws (Acts 1919, p. 288; Acts 1921, p. 221), relating to authority to issue bonds for building and equipping schoolhouses in school districts, require submission of the question at an election to determine whether bonds shall issue, and contemplate that the registration lists of voters, after being purged by the registrars of the county as furnished by the tax-collector to the election managers, shall show the persons entitled to vote and shall constitute the measure for ascertaining the number of lawful votes for issuance of bonds necessary to carry the election. If in a given case the number of votes cast for issuance of bonds is insufficient to amount to the required proportion necessary to carry the election, the judge of the superior court, on application to validate bonds, can not change the result by striking names of persons not qualified to register from

the registration lists, thus reducing the total number appearing thereon until the number of lawful votes cast for bonds shall constitute the requisite proportion.

No. 5805.  September 14, 1928.

Certiorari; from Court of Appeals.  36 *Ga. App.* 92.

In the petition for certiorari error is assigned upon the following decision of the Court of Appeals: "In an election for bonds to build a schoolhouse for a school district in a county, 'the bonds could not lawfully be issued without the assent of two thirds of the qualified voters of the district, voting at an election for that purpose, nor unless the two thirds so voting were a majority of the registered voters of the district.' *Turk* v. *Royal,* 34 *Ga. App.* 717(7) (131 S. E. 119), and citation.  (*a*) A registered voter is not necessarily a qualified voter; and in a proceeding to validate school bonds, where it appeared that although two thirds of the qualified voters of the district voted for the bonds, this did not constitute a majority of the registered voters of the district, the judge of the superior court had no authority to purge the list of the registered voters of the district of unqualified voters, so as to make the two thirds voting for the bonds a majority of the registered voters of the district, and his ruling in so doing was error, and his judgment validating the bonds was error."  The grounds of alleged error are:  (a) that the decision denies power of the court to hear evidence and strike from the registration list the names of persons who are illegally upon said registration list, thereby reducing the total number of names appearing on the list so that the number of legal votes cast for bonds would amount to more than a majority of the persons whose names were legally upon said registration list. (b) That it denies authority of the judge of the superior court to purge the list of the registered voters of the district of these unqualified voters, so as to make the two-thirds voting for the bonds a majority of the registered voters of the district.  (c) That the decision fails to follow, as a precedent, the decision of the Supreme Court in the case of *Davis* v. *Warde,* 155 *Ga.* 748 (4) holding that "where  .  .  the result of the election was declared by the board of canvassers provided by the charter, such declaration of the result of the election is prima facie correct; but where such election is attacked on the ground that the registration list, which was prepared and furnished the managers of the election contained names of persons who were not authorized to register and to vote, a

court of equity may hear evidence and determine whether such registration list contained names of persons who were not entitled to register and vote," and failed to follow the general law and constitution of this State. (d) That the decision failed to hold that the court could receive evidence establishing whether the registration list contained names that should not have been placed thereon, and eliminate those persons whose names are illegally upon said registration list, in arriving at the result of the election.

*Lawrence S. Camp,* for plaintiff in error.

*J. H. Longino* and *Post & Arnold,* contra.

ATKINSON, J. The judgment was not erroneous for any of the reasons assigned. Section 143 of the act of 1919 (Acts 1919, pp. 288, 346), known as the Code of School Laws, as amended by the act of 1921 (Acts 1921, pp. 221, 224), providing for elections in school districts and other municipal subdivisions to determine whether bonds shall issue to build and equip schoolhouses, provides that "none but registered qualified voters shall be permitted to vote in said election." Said section of the Code of School Laws as amended also provides that: "The tax-collector shall furnish a certified list of registered voters in such school district, . . to the managers of the election ten (10) days before such election is held." Section 145 of the Code of School Laws, as amended by the act of 1921 (Acts 1921, pp. 221, 227), provides that: "The tax-collector shall furnish a certified list of registered voters . . in the territory to be affected, to the managers of the election, ten days previous to said election, and after the same has been purged by the board of registrars as now provided by law in cases of special elections." The act of 1911 (Acts 1911, p. 167), entitled "An act to prescribe the qualifications of voters for special elections," etc., by section 2 thereof, providing for registration of voters to vote at a "special election," imposes upon "the registrars" the duty to "purge the list of registered voters." Other acts of the legislature relating to the registration of voters provide for the purging of registration books and lists of voters taken from the books to be delivered to election managers, and impose the duty on county registrars to purge the books and lists of the names of all disqualified voters. It is nowhere provided that the duty of purging the lists of registered voters required to be furnished to the election managers shall be imposed upon the judges of the superior courts. Sec-

tion 145 of the Code of School Laws, as amended (Acts 1919, pp. 288, 348), also provides: "In the event that two thirds of the votes cast at such election shall be in favor of 'schoolhouse bonds,' and such two-thirds is also a majority of all the voters qualified to vote in said election, then the bonds shall be issued and sold, under all of the regulations now provided by law for other county bonds." To determine what number of votes would amount to two thirds of the votes cast at the election or would amount to a majority of the voters qualified to vote in the election, resort must necessarily be had to the registration lists. A person may be qualified in the sense that he is a citizen and labors under no legal disqualification to become an elector, and yet be unauthorized to vote unless he has complied with the registration laws and has become lawfully registered as a voter. In *Goolsby* v. *Stephens,* 155 *Ga.* 529, 538 (117 S. E. 439), it was said: "Now registration is one of the qualifications of voters." It was held in that case that an election for bonds in the absence of provision for registration and actual registration "is null and void, as it is impossible to determine, without such registration, that a majority of the registered voters of the" district "have given their assent to the creation of" the debt. See also *Chapman* v. *Sumner School Dist.,* 152 *Ga.* 450 (109 S. E. 129) ; *Turk* v. *Royal,* 34 *Ga. App.* 717 (7) (109 S. E. 129). The purpose of the statute is twofold: first, to authorize an issuance of bonds for the purposes therein provided; and second, to safeguard exercise of the authority by the limitation therein expressed. Giving due weight to the expressed limitation, there can be no valid election for bonds without registration. The legislature while enacting this law had due regard for the existing law in relation to registration and purging of registration lists of voters by the registrars, and contemplated that the requisite number of votes essential to carry the election for issuance of bonds should be the prescribed proportions of the voters whose names should appear upon the registered voters lists as purged by the official registrars. The voters' lists would indicate the names of the persons qualified to vote, and the total number appearing thereon would supply the measure for determining the number of lawful votes necessary to carry the election for bonds. It was not contemplated that any of the names should be taken off of the registration lists after being purged by the registrars, in order to reduce the number of votes that would

be necessary to constitute two-thirds of the persons voting at the election or a majority of the qualified voters in the district. It was not contemplated that in an election for bonds, if the votes cast for issuance of bonds were insufficient in number to amount to two thirds of those voting at the election or a majority of the qualified voters in the district, the judge of the superior court, on an application to validate the bonds, could change the result by purging the lists already purged by the registrars of the names of persons who were not qualified to become electors, to such an extent as that the persons lawfully voting for bonds would constitute the requisite proportion of all the qualified voters to carry the election. Such action upon the part of the judge would be beyond the comprehension of the statute, and if carried into effect would cause bonds to issue without having received the number of votes contemplated by the legislature. This decision does not conflict with the ruling of this court in *Davis* v. *Warde,* 155 *Ga.* 748 (118 S. E. 378). That case did not refer to the validation of bonds, and did not involve application of the statutes hereinabove mentioned. It is not intended to hold that the judge of the superior court, in determining whether the requisite number voting for the issuance of bonds, may not inquire into the qualifications of the voters who voted at the election or those who appeared on the registration lists and did not vote. That the judge could do so there is no doubt. But the ruling intended to be made is that the purged registration lists of voters as delivered by the tax-collector to the election managers must be looked to as showing the total number of votes the prescribed proportion of which must have voted for the issuance of bonds in order to carry the election.

*Judgment affirmed. All the Justices concur.*