## BUCHANAN *et al. v.* WOODLAND CONSOLIDATED SCHOOL DISTRICT *et al.*

No. 7021. MAY 14, 1929. REHEARING DENIED JUNE 13, 1929.

*G. C. Thompson* and *W. E. Smith,* for plaintiffs in error.

*Walker R. Flournoy, solicitor-general, Lawrence S. Camp, John A. Smith,* and *J. H. McGehee,* contra.

HINES, J. Paragraph 1 of section 7 of article 7 of the constitution of this State provides that no county, municipal corporation, or political division of this State "shall incur any new debt, except for a temporary loan or loans to supply casual deficiencies of revenue, not exceeding one fifth of one per centum of the assessed value of the taxable property therein, without the assent of two thirds of the qualified voters thereof voting at an election for that purpose to be held as prescribed by law, provided said two thirds so voting shall be a majority of the registered voters." 10 Park's Code Supp. 1922, § 6563; Acts 1918, pp. 99, 100; Ga. Code, 1926, § 6563. Under this constitutional provision no bonded debt can be created by a consolidated school district "without the assent of two thirds of the qualified voters thereof voting at an election for

that purpose to be held as prescribed by law;" and such two thirds must constitute "a majority of the registered voters." The existence of both of these conditions is essential to authorize the issuance by a school district of bonds for erecting a schoolhouse. In other words, two thirds of the qualified voters of the district must vote in favor of the issuance of such bonds, and such two thirds must constitute "a majority of the registered voters." Under the above constitutional provision there must be a registration of the qualified voters in the school district; and where an election is held for the purpose of issuing bonds, in the absence of a provision for such registration, and of such registration, such election is null and void, for the reason that it is impossible to determine, without such registration, that a majority of the registered voters of such school district have given their assent to the creation of such bonded indebtedness. Goolsby v. Stephens, 155 Ga. 529 (2) (117 S. E. 439). The above provision of the constitution provides that an election for the purpose of issuing school bonds shall "be held as prescribed by law." The code of school laws, as amended by the act of August 15, 1921, provides for the manner of holding such an election; and contains this provision: "The tax-collector shall furnish a certified list of registered voters in such school district, consolidated district, . . to the managers of the election ten (10) days before such election is held, and after the same has been purged by the board of registrars as now provided by law in cases of special elections." Acts 1919, p. 347; Acts 1921, pp. 221, 225. The purpose of this registration list is twofold. One purpose is to inform the managers what persons are registered and qualified to vote at such election. The other purpose is to furnish a list of the registered voters so that it may be determined whether, in the event two thirds of the qualified voters cast their votes for bonds, such two thirds constitute "a majority of the registered voters."

In a proceeding to validate consolidated school district bonds, the court should, in a case of proper pleadings and evidence, reject ballots cast in favor of the issuing of such bonds by persons who are not lawfully qualified to vote under the constitution and laws of this State; but in determining whether two thirds of the qualified voters of a district constitute a majority of the registered voters, the court should not deduct from the registration list persons appearing thereon who are not lawfully qualified to vote under the

constitution of this State. This construction is in accord with the literal and the reasonable construction of the constitutional provision upon this subject. This provision, when referring to the vote necessary to authorize the making of any debt, declares that two thirds of the qualified voters·voting at the election are necessary in order to give the proper assent to the creation of such debt. Without the assent of two thirds of the qualified voters voting at such election, no debt can be incurred. Here the makers of the constitution use the term "qualified voters." So there must be two thirds of the qualified voters in favor of incurring the debt; and the constitution goes further and declares that said two thirds of the qualified voters must constitute "a majority of the registered voters." Here the makers of the constitution use the term "registered voters," and do not use the term "qualified voters." If the framers of the constitution had intended to provide that the two thirds voting for the debt should constitute a majority of the qualified voters, they would have used the term "qualified voters" instead of the term "registered voters." A person may be a registered voter and not a qualified voter. If registered, a person is prima facie qualified to vote; but in determining whether he is qualified to vote, the court in a proper case can, as we have seen, hear evidence upon that question and reject his ballot if the voter casting it is not a qualified voter. We can not hold that a person who is duly registered should not be considered as registered in ascertaining whether two thirds of the qualified voters voting at the election constitute a majority of the registered voters, because such voter is not otherwise lawfully qualified to vote. Besides, this construction has already been placed upon this constitutional provision by this court by a full bench; and for this reason, in addition to what we have said above, this construction is now binding on this court. In *Goolsby* v. *Stephens,* supra, we held, that, under this provision of the constitution of this State, a municipality could not incur any new debt except to meet casual deficiencies, as provided in such provision, "without the assent of two thirds of the qualified voters thereof voting at an election for said purpose; and said two thirds so voting must be a majority of the registered voters of said municipality." In that case the decision was not· by a full bench. In *Fairburn School Dist.* v. *McLarin,* 166 *Ga.* 867 (144 S. E. 765), this question again came before this court;

and the court by a full bench held as we have held above. In *Cole* v. *McClendon*, 109 *Ga.* 183 (3) (34 S. E. 384), this court was dealing with a contested election, and with the question whether votes should be rejected because of certain irregularities in the entering of the names of the persons voting upon the official registration list. This court was not dealing with the construction of the constitutional provision involved in this case. In *Turk* v. *Royal*, 34 *Ga. App.* 717 (7, 8) (131 S. E. 119), the Court of Appeals followed the ruling made by us in this case. It does not sufficiently appear that the ruling of the Court of Appeals, in headnote 4 of the opinion in *Daniel* v. *Claxton*, 35 *Ga. App.* 107 (132 S. E. 411), conflicts with the ruling we make in this case; but if such conflict exists, that ruling must yield to what we hold in this case. There is nothing to the contrary of what we hold in *Chapman* v. *Sumner Consolidated School Dist.*, 152 *Ga.* 450 (109 S. E. 129).

So we are of the opinion that the question propounded by the Court of Appeals must be answered in the negative.

*All the Justices concur.*