27439. HARRELL *et al.* v. PINE GROVE CONSOLIDATED SCHOOL DISTRICT.

Decided March 3, 1939.

*Hamilton Burch,* for plaintiffs in error.

*George R. Lilly, solicitor-general, Franklin & Eberhardt,* contra.

MacINTYRE, J. The bill of exceptions, as finally corrected and certified by the trial judge, states: "Be it remembered in the case of the State of Georgia vs. Pine Grove Consolidated School District, the same being a petition to confirm and validate bonds in the sum of twenty thousand dollars ($20,000), filed to the May term, 1938, for the superior court of Lowndes County, the court did, on the 19th day of November, 1938, try and determine said cause." Paragraph 1 of the bill of exceptions assigns error on the overruling of the demurrer to the petition. This demurrer was properly overruled. Even if it is conceded that paragraph 2 of the bill of exceptions properly raises the question "that seventy-six votes cast in favor of the bonds were not cast by a majority of the registered voters of said school district," the exception is not meritorious, for the duty to purge the list of registered voters is imposed upon the registrars. "It is nowhere provided that the duty of purging the lists of registered voters required to be furnished to the election managers shall be imposed upon the judges of the superior courts." *Fairburn School District* v. *McLarin,* 166 *Ga.* 867, 869 (144 S. E. 765). The judges of the superior courts can not "deduct disqualified voters from the number of voters appearing upon the registration list furnished by the tax-collector to the election managers, in order that the number of votes cast for bonds shall thereby constitute a majority of the registered voters." *Buchanan* v. *Woodland Consolidated School District,* 168 *Ga.* 626 (2) (148 S. E. 663).

Paragraph 3 of the bill of exceptions, as finally corrected and certified by the trial judge, is here quoted verbatim et literatim as follows: "That the judgment of the court confirming and validating said bonds was contrary to law for the reason that one hundred and seventeen ballots were deposited in the ballot box and that seventy-six votes were not two thirds of said number; although two of said ballots appearing not to have had stricken therefrom the words: 'For Schoolhouse' or the words 'Against Schoolhouse' appearing thereon, that is to say, neither of such ballots showing on which side of the question being voted on at the bond election was

intended to be voted for or against by the voters casting such two ballots, such two ballots were thrown out and not counted by the managers of the election as voting for or against bonds and the two voters, who cast such ballots, were not counted by the election managers as having voted at the election; and although the election managers threw out and did not count the ballot of J. N. Alexander and did not count him as having voted at such election, because his name did not appear on the certified list of registered voters of said district furnished to the managers of the election by the tax-collector or tax-commissioner of Lowndes County ten days before such election was held; thereby reducing, according to the decision of the election managers, the number of qualified voters voting at said election to 114 instead of 117, which latter number plaintiffs in error contend is the correct number of qualified voters voting at said election; and although on the day before the election the tax-collector or tax-commissioner delivered to J. N. Alexander a certificate that he was a qualified voter in the Pine Grove School District, which certificate was delivered to the election managers on the day of the election by J. N. Alexander, even though his name was not on the list of voters, certified by the registrars of said county and the tax-collector or tax-commissioner and furnished to the election managers ten days before the election." Paragaph 4 is "that the judgment of the court confirming and validating said bonds was contrary to law and without evidence to support."

As we construe paragraph 3, it is merely a statement of the contentions of the plaintiffs in error, and the judge merely certified that the plaintiffs in error made these contentions, but the judge did not certify that the facts set out in these contentions are in fact true and correct. There is a purported brief of evidence in the record, but it can not be considered by this court for the trial judge has not approved it or any other brief of evidence. *Fruit Dispatch Co.* v. *Roughton-Halliburton Co.*, 9 *Ga. App.* 108 (70 S. E. 356). The plaintiffs in error having interposed objections based upon facts, the proof of which does not appear in the record by evidence properly before the court, the objections in this paragraph depend for their existence upon evidence aliunde the record. The intervenors in the court below, now the plaintiffs in error, did not carry the burden placed upon them of proving facts which would support their contentions, which the judge, in paragraph 3 of the

bill of exceptions, certified was made by them. The assignments of error as to these contentions in paragraph 3 require a consideration of the evidence and, the purported brief thereof not having been approved, it is well settled that this court can not consider this assignment. *Powell* v. *Consolidated School District,* 26 *Ga. App.* 135 (105 S. E. 616).

*Moreover, even if we consider paragraph 3 or any part thereof as a recital of fact, it conflicts with the specific finding of fact as stated in the judgment. Therefore there is a conflict between the bill of exceptions and the record, and the bill of exceptions must yield to the record.* In the judgment, the judge stated that he found from the evidence that a specific fact existed, and in the bill of exceptions he certified that this specific fact does not exist. If we had a brief of evidence, this court could determine whether the evidence authorized such a finding. It should be noted that the judgment is not a general judgment such as states only one finding which is a final conclusion of the court, but here the judge states in his judgment that he specifically found from the evidence that certain, separate, component facts have been established and that each of these component facts, when taken together, make up the whole of what the statute states constitutes a prima-facie case for the validation of the bonds. *Powell* v. *Consolidated School District,* supra. In other words, the judge specifically states in his judgment that he made certain specific findings of fact after having heard the evidence as to each of such findings and, basing these findings of fact thereon, he made up his judgment by applying the law to these facts so found.

We overrule the amended motion to dismiss the writ of error on the ground that neither of the intervenors, now the plaintiffs in error, was a voter and taxpayer or resident of the district in question, because the judgment specifically found as true the facts alleged in the petition and answer and in all exhibits, including exhibit "D."

Unless the statement in the judgment that, "upon consideration of the proof submitted in support of all the allegations of the petition and answer, and objections being made to the issue of the bonds described in said petition. . . It appearing further that all the facts alleged in said petition and answer, and in the exhibits thereto attached and made a part thereof, are true . . ,"

is a finding that the voter's list referred to in paragraph 3 of the answer and made a part thereof is a finding of the truth thereof by the court, there is no proof that the intervenors were voters and taxpayers and had a right to intervene. Applying the same rule, it follows that the judgment specifically found as true the facts alleged by way of exhibit "B" in paragraph 3 of the answer, which exhibit stated, "that of the total number of votes cast at said elections, they were cast as follows: For schoolhouse—that is to say for the issuance by said school district of the said '1938 Pine Grove Schoolhouse bonds,' 76 votes; Against schoolhouse—that is to say against the issuance by said school district of said '1938 Pine Grove Schoolhouse bonds,' 38 votes; and, Whereas, it appears from said consolidation made as aforesaid that more than two thirds of the voters actually voting in said election have voted in favor of the schoolhouse." This is in effect a finding by the judge that 114 votes actually voted in said election, and that the 76 voting for bonds were more than two thirds of the voters actually voting. If we should consider paragraph 3 of the bill of exceptions as a recitation of fact instead of a recitation of plaintiffs in error's contention, it seems to us that the bill of exceptions would be stating that 117 ballots were deposited in the ballot box, instead of 114 as stated in the judgment, and of course in such a case where there is such a conflict, the judgment, being a part of the record, should prevail. None of the other assignments of error is meritorious.

*Judgment affirmed. Broyles, C. J., concurs. Guerry, J., dissents.*

GUERRY, J., dissenting. It appears from the bill of exceptions and the record, without necessity for reference to any brief of evidence, that a bond election was regularly called for the Pine Grove Consolidated School District of Lowndes County; and that ten days before the election the tax-collector and registrars furnished to the managers named for said election a certified list of qualified registered voters for said Pine Grove Consolidated School District, containing 130 names. A day before the election, upon the authority of the registrars and the tax-collector of Lowndes County, the name of J. N. Alexander was also authorized to be added to the list, his name having been left off the certified list by inadvertence. At the election 117 votes were deposited in the box; 76 voted for the

bonds, 38 voted against them, and two of the ballots cast were unmarked either for or against. J. N. Alexander, whose name was added as above stated, was allowed to vote, and voted at said election, but in counting the votes, because his name did not appear on the list furnished ten days before the election, although his name was certified as a registered qualified voter of the district by the tax-collector or commissioner only the day before the election, his vote was not counted. Upon a petition for the validation of said bonds certain residents and taxpayers filed an intervention and objection to such validation, which the trial court after a hearing overruled, and passed an order validating the bonds. Exceptions are taken to this order.

It appears without dispute that, not counting J. N. Alexander, 116 voters cast ballots in said election. While it is true that two of the ballots cast were improperly marked, they were nevertheless cast. Prior to the present law, and under constitutional provisions for the creating of a public debt, there were required two thirds of *all* the qualified voters in the political division attempting to create such debt, voting in favor of such debt. See *Goolsby* v. *Stephens,* 155 *Ga.* 529, 537 (117 S. E. 439). Under the present law as embodied in the Code, § 2-5501, only two thirds of those *voting at an election* called for such purpose are necessary, provided such two thirds constitute a majority of the registered voters of the political division attempting the creation of the debt.

In validation proceedings it has been held that while illegal votes or votes which are shown to be illegal may be thrown out and not counted as a part of the necessary two thirds required, such disqualified votes or voters' names can not be deducted from the list furnished by the tax-collector or registrars to the election managers "in order that the number of votes [qualified] cast for bonds shall thereby constitute a majority of the registered voters." *Buchanan* v. *Woodland Consolidated School District,* 168 *Ga.* 626 (supra); *Calloway* v. *Tunnel Hill School District,* 51 *Ga. App.* 101 (179 S. E. 737). By a like process of reasoning, ballots improperly marked which may not be counted either for or against the bond issue, are not to be deducted from the number of votes cast in such election. The qualified affirmative votes cast must be two thirds of those voting. Two ballots were improperly marked, according to the record in this case, and were not counted either for

or against the bonds. The election managers certify also that these votes were not certified as being cast at all, and it was shown that only voters who had properly marked their ballots were counted as having voted in said election. The 76 votes in favor of the bonds and the 38 votes against the bonds total 114 votes. 76 is exactly two thirds of this number. If the two voters who improperly marked their ballots are also counted, 116 voters voted and the bonds failed to carry. This court in *Calloway* v. *Tunnel Hill School District,* supra, decided the exact question. In that case, although four ballots were improperly marked, it was held that they were to be counted in determining the total number of qualified votes cast, and such being the case, the bond issue failed. In the present case the 76 votes in favor of the bond issue did not constitute two thirds of 116 votes shown by the record to have been cast in the election, and for that reason the court erred in ordering the validation of the bonds.

I think, also, it was error to fail and refuse to count the vote of J. N. Alexander. If this vote had been counted, the total votes cast would have been 117. J. N. Alexander was a qualified, registered voter of Lowndes County, according to the certificate of the tax-collector and registrars furnished to the election managers before the election. Code, § 34-407, provides: "Any person who has registered for any general election shall, if otherwise qualified to vote at any special election before the next said general election, be listed and entitled to vote at such special election." It is true that a voter might not qualify after the list had been made up by the authorities and furnished to the managers ten days before election, and by reason of this fact then have his name included in such list; on the other hand, the failure of the tax-collector or registrars, through inadvertence or design, to put his name on such list ten days before the election will not prevent them from including his name on such list before the election is held. A qualified registered voter may by mandamus compel the registrars to include his name in the registered list of voters. See *Bearden* v. *Daves,* 139 *Ga.* 635 (77 S. E. 871). The list of voters to be furnished election managers, under the provisions of the Code, § 32-1401, should include all the registered, qualified voters resident in the district affected. It is true that this list so furnished is conclusive evidence; *after* an election, as to the number of voters in such district, and

is the rule to determine whether the number of votes cast in favor of the bonds is a majority of the votes in the district. It is provided that such list shall be furnished ten days before the election. This provision is not mandatory to the extent of depriving a voter, as in the present case, whose name has been inadvertently left off the list, from having the same included within the list of names. It is a directory provision under such a state of facts. To hold otherwise would be to deny a voter his franchise under the clear provisions of the statute as above stated. The fact that he was entitled to vote and his name was left off the list, will not, after holding the election, invalidate the same or enlarge the list of voters. The ten-day provision of the section above quoted is not so fundamental as to prevent the tax-collector or registrars from correcting, before the election, an error which they may have inadvertently made. The court erred in holding that there was no error on the part of the election managers in refusing to count the ballot which they had allowed J. N. Alexander to cast.

The trial judge refused to certify the bill of exceptions as first presented to him, but notified counsel in writing, a copy of which was attached as a part of his certificate, in which he said paragraph 3 of the bill of exceptions "does not set forth all that actually transpired in reference to the matters therein referred to, and that this paragraph should have affixed thereto as a part thereof, and it is so directed, the following recital," and then follows a statement of facts as set forth above. The bill of exceptions was amended so as to incorporate this recital of fact by the trial judge, and was certified by the trial judge; and in his certificate it was further ordered that the statement of facts as contained in the written objections of the trial judge be made a part thereof. The certificate is a statement of facts as "actually transpired," and is not a mere certificate as to the contentions of plaintiffs in error.

I have considered this case in the light of the record and the bill of exceptions without reference to the brief of evidence which does not appear to have been approved or certified by the trial judge. The letter of instruction of the trial judge to counsel for plaintiffs in error, pointing out the defects in the bill of exceptions as originally tendered to the judge, was followed by the plaintiffs in error by amending or remaking their bill of exceptions, and such amended bill of exceptions was certified by the trial judge as true, and as

being what actually transpired, not what plaintiffs in error contended had transpired. Plaintiffs in error did contend that these facts which were certified as being true demanded a finding contrary to the order and decree of the judge validating the bonds. The trial judge, in order to make sure that his letter of instruction as to the amending of the bill of exceptions would portray accurately all that "actually transpired," incorporated such letter as an exhibit in his certificate approving the bill of exceptions. The bill of exceptions in final form as it came to this court set out the facts as fully as a brief of evidence might have done. The record introduced by the proponents of the bonds shows that the intervenors were residents and taxpayers of the area to be affected. If the finding of the trial judge in his order validating the bonds, to wit, "at said election two thirds of the qualified, registered voters of said Pine Grove Consolidated School District, who voted, voted in favor of the issuance of said bonds," is conclusive as to its correctness irrespective of the facts on which such finding is based, no verdict or judgment might ever be set aside although it be contrary to the evidence. This court has before it, certified to by the trial judge, the fact that 117 ballots were deposited in the ballot box; that two of such ballots were not counted because they were not marked either for or against the bonds. One other ballot, that of J. N. Alexander, was not counted because his name was not on the list furnished to election managers ten days before the election, although his name was certified to such election managers the day before the election as being entitled to be placed on such list. With these three votes not being counted, only 114 votes were counted and of this number 76 voted for the bonds and 38 against them. I think this record shows these facts, and that such facts show that two thirds of those voting at said election failed to vote for the bonds; and for that reason the order validating the bonds was invalid.