43790. HOLLIFIELD et al. v. VICKERS, Ordinary, et al.

ARGUED JULY 2, 1968—DECIDED JULY 12, 1968—
REHEARING DENIED JULY 30, 1968—

230

*V. D. Stockton, Heard & Leverett, Robert M. Heard, L. Clif-ford Adams, Jr.,* for appellants.

*Knox Bynum, John G. Davis, Irwin R. Kimzey, Robert B. Struble,* for appellees.

HALL, Judge. The defendants contend that in the special Act's requirement that 45% of the registered voters must vote in the election the General Assembly intended the term "regis-

tered voters" to mean the list of registered voters regardless of whether each name on the list is that of a qualified voter. The contention overlooks the fact that a voter must be a person, and a list or enumeration of "registered voters" can only be a list of names identifying individual persons who have registered in order to exercise their right to vote. Thus, a "registered voter" must be both registered and a person, for only a person can be a voter. A name of a deceased cannot vote, and a name identifying a person cannot vote, whether registered or not. So, without deciding whether the terms "registered voters" and "registered and qualified voters" have different meanings in the special Act, as the defendants contend, it is not seriously disputable that the General Assembly did not intend the term "registered voters" in the 45% requirement to include things that cannot possibly be voters—deceaseds and duplicated names of living persons. Furthermore, to construe the special enactment of the General Assembly to create a requirement based on a registration list including such things would make it conflict with the general law.

The Georgia Election Code of 1964, Ga. L. 1964, Ex. Sess., p. 26 et seq. (referred to hereinafter by reference to Code Ann.) applies to all elections and primaries other than a municipal primary or election. *Code Ann.* § 34-102. The Georgia Constitution of 1945 prohibits any special registration of voters. *Code Ann.* § 2-6001. "The word 'elector' shall mean any person who shall possess all of the qualifications for voting now or hereafter prescribed by the laws of this State and shall have registered in accordance with the provisions of this Code." *Code Ann.* § 34-103 (g). Under the Election Code the list of voters is called "electors' list" or "list of electors." *Code Ann.* §§ 34-622, 34-629. The registrars prepare a "true and correct list of *electors* of their county." *Code Ann.* § 34-622. Those entitled to vote in the election are "Each *elector* whose name appears on such list, and who is not found to be disqualified subsequent to the filing of such list." *Code Ann.* § 34-624. Therefore the voter must meet two requirements—be an *elector* when placed upon the list and not be disqualified subsequent to that time. In our opinion a deceased person does not meet these requirements. An elector must be a person.

The defendants contend that the contestants are prevented by laches from challenging the registration list after the results of the election have been declared, because they did not do so before the election. It is true that the Election Code (*Code Ann.* § 34-628 (a)) provides a procedure by which "any elector of the county shall be allowed to challenge the right of registration of any person whose name appears upon the electors' list . . . [or] the qualifications of any applicant for registration," and "Any elector of the county shall be allowed to challenge the right to vote of any person whose name appears upon the electors' list by making application to the board of registrars of the county at any time including election day itself." *Code Ann.* § 34-628 (c). These provisions relate to the challenge of a *person* and require notice to the person challenged and determination of his qualifications after hearing. The present complaint does not allege disqualification of any persons, but that a number of the names on the list are not the names of persons. Proof of these allegations would show that the enumeration of these names is a nullity.

The Election Code provides a time and method by which the registrars shall prepare the election list. This includes the examination of lists of disqualified persons and persons who have died, furnished the registrars by public officials. *Code Ann.* §§ 34-621, 34-622. With respect to special elections it provides: "It shall be the duty of the registrars upon the call of a special primary or election to purge the list of electors prepared for the last November election of any names subsequently disqualified for any reason and to furnish the poll officers of such special primary or election two lists, one composed of the names of electors entitled to vote by reason of their registration for the last November election, and the other made up of the names of those entitled to vote by reason of their subsequent registration as hereinbefore provided, . . ." *Code Ann.* § 34-626. The supplemental list of electors who have registered to vote since a general primary or election is filed with the clerk of the superior court and the Secretary of State within 10 days after the call of such special election, ". . . but the registrars shall purge such list before filing it of all persons who will not

be qualified to vote, in the same manner as provided with reference to the list for a November election." *Code Ann.* § 34-626.

The grounds of the complaint and the statute itself answer the defendants' arguments that the complaint does not state a claim for relief because the issues were not raised by challenges to persons applying or registered to vote, and does not allege any failure to purge or improper purging of the list.

The right of "any five electors who were entitled to vote . . . for or against such question" to contest the election answers the defendants' objection to a limited or partial purging of the list. If any grounds for contest exist other than those alleged in this complaint they could be asserted. *Code Ann.* §§ 34-1702, 34-1703.

The trial court was correct in its opinion, stated in the judgment, "that this is the proper type of proceeding and is properly filed, pursuant to the contest provisions of the Election Code of Georgia."

The defendants cite as supporting their position *Fairburn School District v. McLarin,* 166 Ga. 867, 871 (144 SE 765). This case involves a bond validation proceeding rather than an election contest, as does *Buchanan v. Woodland Consolidated School District,* 168 Ga. 626 (148 SE 663). Both opinions distinguish the case from those involving election contests. The *Fairburn School District* opinion reads: "The ruling intended to be made is that the purged registration lists of voters as delivered by the tax-collector to the election managers must be looked to as showing the total number of votes the prescribed proportion of which must have voted for the issuance of bonds in order to carry the election." P. 871. This ruling is prefaced by: "It is not intended to hold that the judge of the superior court, in determining whether the requisite number voting for the issuance of bonds, may not inquire into the qualifications of the voters who voted at the election or those who appeared on the registration lists and did not vote. That the judge could do so there is no doubt." The opinion stated that the statutes in effect when the bond election was held did not contemplate that the judge of the superior court could change the result of the election by purging the lists of the names of

*persons* who were not qualified to become electors. Neither this decision nor any other known to us deals with or holds that the court trying an election contest cannot discount from the registration or electors' list names which the evidence shows do not identify persons or individual voters.

Furthermore the decisions discussed above are superseded by the Georgia Election Code, supra. See *Code Ann.* §§ 34-1702, 34-1703, 34-1704 (d), 34-1706 (b) and 45-1708 (a). In *Laite v. Stewart,* 112 Ga. App. 853, 855 (146 SE2d 553), in a full bench decision, this court held: "The new Georgia Election Code is a detailed, elaborate and comprehensive revision of the election laws of the State. The General Assembly is presumed to have reviewed and considered not only all of the existing statutes on the subject of elections but also the decisions of both appellate courts on the subject. It is our opinion that in adding an additional ground which would avoid an election the General Assembly intended that the Election Code supersede the rulings of the courts voiding or not voiding elections depending on whether the violations of the election laws involved a mandatory or directory provision when neither kind was defined or spelled out by statute. In so doing the new Election Code provided liberal rules for the contesting of elections and strict penalties for the violations of requirements by election officials to the end that justice be done and that expensive additional elections be avoided unless the violations of the Election Code caused the result of an election to be placed in doubt or caused the result to be different from what it would have been but for the violations."

The allegations in the complaint that the electors' list contained at least one hundred names of deceased persons and at least thirty duplications, sufficiently stated a claim for relief, i.e., this fact would have changed the result of the election or would have placed the result in doubt. *Code Ann.* § 34-1703.

The trial court erred in sustaining the motion to dismiss the complaint.

*Judgment reversed. Bell, P. J., and Quillian, J., concur.*